699 F.2d 490
 9 Media L. Rep. 1089
 OKLAHOMA TELECASTERS ASSOCIATION, an unincorporated
association; Combined Communications Corporation of
Oklahoma, Inc., an Oklahoma corporation; Griffin
Television, Inc., an Oklahoma corporation; KTVY, Inc., an
Oklahoma corporation; KTUL-TV, Inc., an Oklahoma
corporation; KOTV, Inc., an Oklahoma corporation;
Scripps-Howard Broadcasting Co., an Ohio corporation;
Golden West Broadcasters of Oklahoma, Inc., an Oklahoma
corporation; Blair Broadcasting of Oklahoma, Inc., an
Oklahoma corporation; Eastern Oklahoma Television Co.,
Inc., an Oklahoma corporation; Seraphim Corp., an Oklahoma
corporation; KOKI-TV, an Oklahoma partnership; and Tulsa
TV 41, a joint venture, Plaintiffs-Appellees,
v.
Richard A. CRISP, Director, Alcoholic Beverage Control
Board, Defendant-Appellant.
CABLECOM-GENERAL, INC.; Cox Cable of Oklahoma City, Inc.;
Multimedia Cablevision, Inc.; and Sammons
Communications, Inc., Plaintiffs-Appellees,
v.
Richard A. CRISP, Director, Alcoholic Beverage Control
Board, Defendant-Appellant.
 Nos. 82-1058, 82-1061.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 24, 1983.
 
 Robert D. Nelon, Oklahoma City, Okl. (Roy J. Davis, L. Gene Gist and Nancy M. Thompson, Oklahoma City, Okl., with him on the brief), of Andrews Davis Legg Bixler Milsten & Murrah, Oklahoma City, Okl., for plaintiffs-appellees Oklahoma Telecasters Ass'n, et al.
 Clyde A. Muchmore, Oklahoma City, Okl. (Richard C. Ford, Oklahoma City, Okl., with him on the brief), of Crowe & Dunlevy, Oklahoma City, Okl., for Cablecom-General, Inc. (John D. Matthews, David P. Fleming and J. Christopher Redding of Dow, Lohnes & Albertson, Washington, D.C., for Cox Cable of Oklahoma City, Inc., Multimedia Cablevision, Inc., and Sammons Communications, Inc., with them on the brief), in No. 82-1061.
 Gary W. Gardenhire, Asst. Atty. Gen., Okl., Oklahoma City, Okl. (Jan Eric Cartwright, Atty. Gen. of Okl., Oklahoma City, Okl.), for defendant-appellant.
 Jerry D. Sokolosky, Oklahoma City, Okl., filed an amicus curiae brief for Oklahoma Press Ass'n and Outdoor Advertising Ass'n of Okl.
 Larry Derryberry of Derryberry Duncan & Gray, Oklahoma City, Okl., filed an amicus curiae brief for S.A.N.E., Inc.
 Bill Allain, Atty. Gen. of Miss., and Peter M. Stockett, Asst. Atty. Gen. of Miss., Jackson, Miss. (W. Timothy Jones and John E. Milner of Brunini, Grantham, Grower & Hewes, Jackson, Miss., of counsel), filed an amicus curiae brief for the State of Miss.
 Before BARRETT, McKAY and LOGAN, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 Richard A. Crisp (Crisp) appeals from two summary judgments declaring that certain provisions of Oklahoma's constitution and statutes violate the First and Fourteenth Amendments of the United States Constitution. The appeals were consolidated pursuant to Fed.R.App.P. 3(b).
 
 
 2
 Appellee in No. 82-1058, Oklahoma Telecasters Association (Telecasters), is an unincorporated association of corporations and partnerships engaged in the business of television broadcasting in the State of Oklahoma. Appellees in No. 82-1061 are holders of cable television franchises in the State of Oklahoma and will be referred to as the "cable operators". Appellant, Crisp, is the former director of the Oklahoma Alcoholic Beverage Control Board, an agency charged with primary responsibility for the enforcement of Oklahoma laws regulating the sale and consumption of alcoholic beverages.
 
 
 3
 The Oklahoma Constitution stringently restricts the advertising of alcoholic beverages:
 
 
 4
 It shall be unlawful for any person, firm or corporation to advertise the sale of alcoholic beverage within the State of Oklahoma, except one sign at the retail outlet bearing the words "Retail Alcoholic Liquor Store."
 
 
 5
 Okla. Const. art. XXVII, Sec. 5. The Oklahoma Alcoholic Beverage Control Act similarly prohibits the advertising of "alcoholic beverages or the sale of the same within the State of Oklahoma," except by strictly regulated on-premises signs. Okla.Stat.Ann. tit. 37, Sec. 516 (West Supp.1982). That act defines "alcoholic beverage" as "alcohol, spirits, beer, and wine...." Okla.Stat.Ann. tit. 37, Sec. 506(2) (West Supp.1982). The definition of "beer" only includes beverages "containing more than three and two-tenths percent (3.2%) of alcohol by weight...." Okla.Stat.Ann. tit. 37, Sec. 506(3) (West Supp.1982). Since beer can contain 3.2% alcohol or less, the advertising of beer generally is allowed. The advertising of wine and other alcoholic beverages within the state, however, is prohibited.
 
 
 6
 The members of Telecasters rebroadcast network programming that includes advertisements for wine. Although such advertising is lawful where it originates, and in most states where rebroadcast occurs, the members of Telecasters are required to "block out" network advertising of wine. If Telecasters' members fail to do so, or if they solicit or accept advertisements for alcoholic beverages, they are subject to criminal prosecution by complaint of the Alcoholic Beverage Control Board.
 
 
 7
 The cable operators also are prohibited from soliciting or accepting advertising for alcoholic beverages. For many years, however, the cable operators have been allowed to relay programming from out-of-state television stations that included advertisements for wine. In fact, Federal Communication Commission regulations and federal copyright law prohibit cable operators from altering or modifying the television signals, including advertisements, they relay to subscribers. See 17 U.S.C. Sec. 111(c)(3) (1976) and 47 C.F.R. Sec. 76.55(b) (1981). Despite those federal requirements, the Attorney General of the state of Oklahoma on May 19, 1980, issued an opinion declaring that the prohibitions against alcoholic beverage advertising apply to cable television in the same manner as they apply to broadcast television. Pursuant to that opinion, Crisp notified the cable operators that the wine commercials they had been relaying were illegal, and threatened the operators with criminal prosecution if they continued to relay such commercials.
 
 
 8
 Telecasters and the cable operators filed separate suits against Crisp, in his official capacity, in the United States District Court for the Western District of Oklahoma. Pursuant to 28 U.S.C. Sec. 2201 (Supp. IV 1980), both plaintiffs asked the court to render a declaratory judgment that Oklahoma's laws, Okla. Const., art. XXVII, Sec. 5, and Okla.Stat.Ann. tit. 37, Sec. 516, supra, violated their rights to free speech, guaranteed by the First and Fourteenth Amendments, and equal protection, guaranteed by the Fourteenth Amendment.[1] In addition, the cable operators requested and received a preliminary injunction, and both plaintiffs sought permanent injunctions, prohibiting Crisp from enforcing the constitutional and statutory prohibitions against them.
 
 
 9
 Both the cable operators and Telecasters filed motions for summary judgment under Fed.R.Civ.P. 56. Crisp filed motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). On December 18, 1981, the district court filed nearly identical memorandum opinions and orders in the two cases, granting Telecasters' and the cable operators' motions for summary judgment, and denying Crisp's motions to dismiss.
 
 
 10
 In both opinions the district court ruled that the power to regulate liquor granted to the states by the Twenty-first Amendment to the United States Constitution did not override the First Amendment rights of Telecasters and the cable operators. The court then applied the four part analysis the Supreme Court prescribed in Central Hudson Gas and Electric Corp. v. Public Service Commission, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), for determining the validity of the regulation of "commercial speech". That analysis can be summarized as follows: (1) is the commercial speech protected by the First Amendment; that is, does it concern lawful activity and is it not misleading; (2) is the asserted governmental interest substantial; (3) does the regulation directly advance the governmental interest asserted; (4) is the regulation more extensive than is necessary to serve the governmental interest? Id. at 566, 100 S.Ct. at 2351.
 
 
 11
 The district court concluded that Oklahoma's laws only indirectly advanced the stated governmental interest in reducing alcohol consumption and its related problems, and were more extensive than necessary to serve that interest. The court therefore entered declaratory judgments stating that enforcement of the advertising laws does or would violate the plaintiffs' First Amendment rights, as guaranteed by the Fourteenth Amendment. The court also entered permanent injunctions against Crisp, preventing him, or the Alcoholic Beverage Control Board, from enforcing the laws against the plaintiffs.
 
 
 12
 On January 11, 1982, Crisp timely filed a notice of appeal with this court. On February 10, 1982, the district court entered an order withdrawing its December 18, 1981, opinions, and filed nunc pro tunc memorandum opinions in lieu thereof, supplementing and amplifying its views with respect to the granting of summary judgments. The substituted opinions did not alter the court's reasoning or conclusions in any material way; the December and February opinions are nearly identical. Crisp moved to strike the substituted opinions. The district court overruled the motion in Cablecom, but entered no order in Telecasters.
 
 
 13
 Crisp then moved the trial court to stay the permanent injunctions pursuant to Fed.R.Civ.P. 62(c). The trial court denied the motion on May 19, 1982. On October 4, 1982, the Supreme Court dismissed for want of a substantial federal question the appeal in Queensgate Investment Co. v. Liquor Control Commission, --- U.S. ----, 103 S.Ct. 31, 74 L.Ed.2d 45 (1982). In that case the Ohio Supreme Court had upheld against a First Amendment challenge a state regulation which prohibited retail liquor permit holders from advertising the retail price of alcoholic beverages.
 
 
 14
 Based on the Queensgate dismissal, Crisp on November 4, 1982, again moved the district court to suspend the injunctions under Fed.R.Civ.P. 62(c). The district court was unable to hear the motions prior to November 15, when the appeals were scheduled for oral argument. On November 9, therefore, Crisp applied to this court under Fed.R.App.P. 8(a) for an order suspending the injunctions during the pendency of the appeals. At the commencement of oral argument on November 15, 1982, we denied that application.
 
 
 15
 In his briefs, Crisp raises numerous contentions of error, including the propriety of the trial court's summary judgments and nunc pro tunc opinions, the denial of Crisp's request for a hearing on his motion to stay the injunctions, and the trial court's application of the Central Hudson analysis. At oral argument, however, Crisp emphasized the importance of the Queensgate dismissal. We agree that the application of that case is the critical issue in this appeal. Thus, we will first address that issue.
 
 I.
 
 16
 In Queensgate Investment Co. v. Liquor Control Commission, 69 Ohio St.2d 361, 433 N.E.2d 138 (1982), the appellant, Queensgate Investment Co. (Queensgate), was a holder of an Ohio liquor permit who was prosecuted for the violation of certain regulations of the Ohio Liquor Control Commission. The regulations in question prohibited off-premises price advertising by holders of certain liquor permits.[2] The Commission rendered an order suspending Queensgate's license for one week for the violation of the regulation. Queensgate appealed on several grounds, including a contention that the regulation was an unconstitutional restraint on its First Amendment right to engage in commercial speech.
 
 
 17
 The Ohio Supreme Court applied the analysis articulated in Central Hudson, supra, and held that the regulation did not violate the First Amendment. The court first held that the speech was protected and that the asserted governmental interest, that of discouraging the excessive consumption of alcoholic beverages, was substantial and was well within the powers granted to the states under the Twenty-first Amendment. The court then held that since it was directed at controlling alcoholic beverages, not speech, the regulation did directly advance the governmental interest. Finally, the court held that the advertising of drink prices and price advantages would encourage the excessive consumption of alcoholic beverages; thus, the prohibition against such advertising was the narrowest method available to prevent such excessive consumption. Queensgate, supra at 69 Ohio St.2d 365-67, 433 N.E.2d 138.
 
 
 18
 Queensgate filed a timely appeal in the United States Supreme Court. The only issue it raised there was whether the regulation violated the "First and Fourteenth Amendments of the Constitution of the United States by suppressing the public dissemination of truthful information about a lawful activity." Jurisdictional Statement at I, Queensgate Investment Co. v. Liquor Control Commission, --- U.S. ----, 103 S.Ct. 31, 74 L.Ed.2d 45. The Liquor Control Commission filed with the Supreme Court a motion to dismiss the appeal on the ground that the question was so unsubstantial as not to warrant further argument. The basis for the motion was that an advertising prohibition was well within the scope of a state's powers under the Twenty-first Amendment, which permits a state to totally ban the sale of liquor, or otherwise "minimize its evils".
 
 
 19
 On October 4, 1982, the Supreme Court dismissed the appeal "for want of a substantial federal question."[3] Queensgate Investment Co. v. Liquor Control Commission, --- U.S. ----, 103 S.Ct. 31, 74 L.Ed.2d 45 (1982). Thus, we must now determine what precedential weight to ascribe to that dismissal in deciding the present appeal.
 
 II.
 
 20
 The seminal case on the precedential effect of summary dispositions by the Supreme Court is Hicks v. Miranda, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). In that case the Court was faced with the problem of the distinction between its appellate jurisdiction and its certiorari jurisdiction. Under 28 U.S.C. Sec. 1257(2) (1976), final judgments of the highest court of a state may be reviewed by the Supreme Court: "By appeal, where is drawn in question the validity of a statute of any state on the ground of its being repugnant to the Constitution ... of the United States, and the decision is in favor of its validity." Unlike certiorari jurisdiction, which is discretionary, the Court's appellate jurisdiction is mandatory. Hicks, supra at 344, 95 S.Ct. at 2289.[4] Thus, when a case comes before it on appeal, the Supreme Court is "not obligated to grant the case plenary consideration ... but [it is] required to deal with its merits." Id.
 
 
 21
 The Court in Hicks therefore ruled that a summary dismissal of an appeal for want of a substantial federal question is a decision on the merits of the case. Such a summary disposition is binding on the lower federal courts, at least where substantially similar issues are presented, until doctrinal developments or direct decisions by the Supreme Court indicate otherwise. Id. at 344-45, 95 S.Ct. at 2289-90.
 
 
 22
 Although the Hicks decision has been criticized for a variety of reasons,[5] since that decision the Supreme Court has consistently stated that summary dispositions--summary affirmances and summary dismissals for want of a substantial federal question--are decisions on the merits and are binding on the lower federal courts.[6] The Court has refined the rule by emphasizing that a summary disposition only upholds the judgment of the lower court; "[i]t does not ... necessarily reflect [the Court's] agreement with the opinion of the court whose judgment is appealed." Washington v. Confederated Bands and Tribes of the Yakima Indian Nation, 439 U.S. 463, 477 n. 20, 99 S.Ct. 740, 749 n. 20, 58 L.Ed.2d 740 (1979); See also Illinois State Board of Elections v. Socialist Workers Party, 440 U.S. 173, 182-83, 99 S.Ct. 983, 989-90, 59 L.Ed.2d 230 (1979); Mandel v. Bradley, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977) (per curiam).
 
 
 23
 It has also become clear that while summary dispositions are rulings on the merits, their precedential effect is limited to the precise issues set forth in the jurisdictional statement:
 
 
 24
 Summary affirmances and dismissals for want of a substantial federal question without doubt reject the specific challenges presented in the statement of jurisdiction and do leave undisturbed the judgment appealed from. They do prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions.... Summary actions, however, ... should not be understood as breaking new ground but as applying principles established by prior decisions to the particular facts involved.
 
 
 25
 Mandel, supra at 176, 97 S.Ct. at 2240. See also Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 499, 101 S.Ct. 2882, 2887, 69 L.Ed.2d 800 (1981); Illinois State Board of Elections, supra 440 U.S. at 182-83, 99 S.Ct. at 989-90; Yakima Indian Nation, supra 439 U.S. at 477 n. 20, 99 S.Ct. at 749. Moreover, although lower federal courts are bound by summary dismissals, they carry less precedential weight in the Supreme Court than opinions rendered after plenary consideration by that Court. Metromedia, supra 453 U.S. at 500, 101 S.Ct. at 2889; Caban v. Mohammed, 441 U.S. 380, 390 n. 9, 99 S.Ct. 1760, 1767 n. 9, 60 L.Ed.2d 297 (1979); Yakima Indian Nation, supra 439 U.S. at 477 n. 20, 99 S.Ct. at 749 n. 20; Tully v. Griffin, Inc., 429 U.S. 68, 74-75, 97 S.Ct. 219, 223-224, 50 L.Ed.2d 227 (1976). In fact, "[i]t is not at all unusual for the Court to find it appropriate to give full consideration to a question that has been the subject of previous summary action." Yakima Indian Nation, supra 439 U.S. at 477 n. 20, 99 S.Ct. at 749 n. 20. See, e.g., Caban, supra 441 U.S. at 390 n. 9, 99 S.Ct. at 1767 n. 9 (the Court gave plenary consideration to an issue presented and summarily dismissed only three years before and reversed itself).
 
 
 26
 This review of the Hicks rule provides some guidance in determining the precedential weight we should give to the summary dismissal of Queensgate. To the extent that the same constitutional issues are presented in this case as were presented in Queensgate, that decision is binding, though the reasoning of the Ohio Supreme Court may not be. In his concurring opinion in Mandel, Mr. Justice Brennan suggested that in determining the reach of a summary dismissal as precedent, a court must: "(a) examine the jurisdictional statement in the earlier case to be certain that the constitutional questions presented were the same and, if they were, (b) determine that the judgment in fact rests upon decision of those questions and not even arguably upon some alternative nonconstitutional ground." Mandel, supra 432 U.S. at 180, 97 S.Ct. at 2242 (Brennan, J., concurring). These guidelines have been used by other courts. See Socialist Workers Party v. March Fong Eu, 591 F.2d 1252, 1257-58 (9th Cir.), cert. denied, 441 U.S. 946, 99 S.Ct. 2167, 60 L.Ed.2d 1049 (1979); Lecates v. Justice of the Peace Court No. 4, 637 F.2d 898, 904-05 (3rd Cir.1980). We consider them to be appropriate here.
 
 III.
 
 27
 The jurisdictional statement in Queensgate presented the following question to the Supreme Court:
 
 
 28
 Whether Regulation 4301:1-1-44 of the Ohio Liquor Control Commission, which prohibits a duly licensed retail liquor permit holder from advertising the retail price of alcoholic beverages in any medium visible from outside the permit premises, violates the First and Fourteenth Amendments of the Constitution of the United States by suppressing the public dissemination of truthful information about a lawful activity.
 
 
 29
 Jurisdictional Statement at I, Queensgate, --- U.S. ----, 103 S.Ct. 31, 74 L.Ed.2d 45. In support of the proposition that the question was a substantial one, the appellant in Queensgate argued that the advertising in question was protected commercial speech, that the Twenty-first Amendment did not allow a state to infringe on protected commercial speech, and that the regulation in question was an unconstitutional infringement on its First Amendment rights when analyzed under the four-part Central Hudson test.
 
 
 30
 In the instant case, the issue is substantially similar. In essence, that issue is: is Oklahoma's advertising prohibition an unconstitutional infringement on protected commercial speech? Implicit in that issue, as we believe was implicit in Queensgate, is the issue of whether the Twenty-first Amendment in some way enhances a state's authority to regulate commercial speech concerning alcoholic beverages. To be sure, there are factual distinctions between Queensgate and the instant case: the regulated parties here are television stations, not liquor permit holders; the laws here prohibit the rebroadcasting of all advertising of alcoholic beverages, except for beer advertising, while the regulation in Queensgate prevented only off-premises price advertising; and other minor distinctions. The crucial similarity between the cases, however, is this: in both cases, the state, acting under its powers granted by the Twenty-first Amendment, has chosen to prohibit some, but not all, forms of liquor advertising with the goal of decreasing the consumption and abuse of alcoholic beverages. We are confident that the constitutional question presented in Queensgate and in the present appeals is substantially the same.
 
 
 31
 The second inquiry is whether there are any nonconstitutional grounds upon which the Supreme Court may have decided Queensgate. As noted above, the appellant's jurisdictional statement in Queensgate, while minimizing the effect of the Twenty-first Amendment, clearly concentrated on the argument that the regulation there violated its First Amendment rights to commercial speech. In its motion to dismiss for want of a substantial federal question, the Ohio Liquor Control Commission relied solely on the argument that the state was free to regulate liquor advertising as part of its broad Twenty-first Amendment power to regulate liquor and minimize its evils. In our view, Queensgate manifestly presented an issue concerning the tension between the First and Twenty-first Amendments. The Supreme Court arguably may have decided the case on nonconstitutional grounds; if so, however, we cannot discern them. It is our view that the Supreme Court decided Ohio's regulation was not an unconstitutional infringement on the appellant's First Amendment rights. The Queensgate dismissal is binding on this court.
 
 IV.
 
 32
 Still, the Supreme Court has warned against courts being so preoccupied with a summary dismissal that they fail "to undertake an independent examination of the merits." Mandel, supra 432 U.S. at 177, 97 S.Ct. at 2241. In light of that warning, and because the laws here in question are indeed broader than the regulation in Queensgate, we will follow the approach taken by the court in Plante v. Gonzalez, 575 F.2d 1119 (5th Cir.1978), cert. denied, 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979); i.e., Queensgate will "caution us" against finding Oklahoma's laws to be unconstitutional, but we must still examine the merits of these appeals. Id. at 1125-26. In undertaking this examination, we are mindful that Queensgate "broke no new ground", and that we cannot reach an opposite conclusion "on the precise issues presented and necessarily decided by" Queensgate. Mandel, supra 432 U.S. at 176, 97 S.Ct. at 2240.
 
 
 33
 The crucial question in this case, as it was under our interpretation of Queensgate, is whether Oklahoma's prohibition against advertising of alcoholic beverages, as applied to the Appellees, violates their First Amendment rights, as guaranteed by the Fourteenth Amendment. The resolution of this issue involves an examination of the relative interests at stake; that is, we must balance the right of Telecasters and the cable operators to engage in commercial speech against the right of Oklahoma, through its general police powers as enhanced by the Twenty-first Amendment, to regulate commercial speech relating to alcoholic beverages.
 
 
 34
 The relevant section of the Twenty-first Amendment states: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const., amend. XXI, Sec. 2. While the states have broad authority to regulate alcoholic beverages under their traditional police powers standing alone, Wisconsin v. Constantineau, 400 U.S. 433, 436, 91 S.Ct. 507, 509, 27 L.Ed.2d 515 (1971), "the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals." California v. LaRue, 409 U.S. 109, 114, 93 S.Ct. 390, 395, 34 L.Ed.2d 342 (1972). Thus, under the Twenty-first Amendment, the states have the power to prohibit totally the sale of liquor within their boundaries, New York State Liquor Authority v. Bellanca, 452 U.S. 714, 715, 101 S.Ct. 2599, 2600, 69 L.Ed.2d 357 (1981) (per curiam); Ziffrin, Inc. v. Reeves, 308 U.S. 132, 138, 60 S.Ct. 163, 167, 84 L.Ed. 128 (1939), and the concomitant power to regulate the times, places, and circumstances under which liquor may be sold. Bellanca, supra, 452 U.S. at 715, 101 S.Ct. at 2600. Moreover, within the power conferred by the Twenty-first Amendment, a "State may protect her people against evil incident to intoxicants ... and may exercise large discretion as to means employed." Ziffrin, supra 308 U.S. at 138-39, 60 S.Ct. at 167.
 
 
 35
 On two separate grounds, therefore, we hold that Oklahoma's alcoholic beverage advertising prohibitions are an exercise of authority within that granted by the Twenty-first Amendment. First, the purpose of the advertising here unquestionably is to encourage sales of alcoholic beverages. As such, the advertising could be considered an incident of the sale of liquor which the state may regulate as it regulates sales themselves: "[t]he prohibition against certain forms of advertising is really a prohibition against soliciting of business." Premier-Pabst Sales Co. v. State Board of Equalization, 13 F.Supp. 90, 96 (S.D.Cal.1935). Alternatively, the laws are justified as one of the means, selected by an exercise of its broad discretion, by which Oklahoma has chosen to achieve the proper goal of protecting its people against the harms incident to the use of alcoholic beverages. Ziffrin, supra 308 U.S. at 138-39, 60 S.Ct. at 167. The latter justification was the one the State of Ohio presented to the Supreme Court in Queensgate. Under either analysis, Oklahoma's liquor advertising laws are within its powers under the Twenty-first Amendment. Accordingly, they are entitled to the " 'added presumption in favor of the validity of the state regulation' conferred by the Twenty-first Amendment." Bellanca, supra 452 U.S. at 718, 101 S.Ct. at 2601 (quoting California v. LaRue, supra 409 U.S. at 118, 93 S.Ct. at 397).
 
 V.
 
 36
 The determination that Oklahoma's laws are within its authority under the Twenty-first Amendment, however, does not end our inquiry. The Twenty-first Amendment did not grant to the states the authority to abrogate individual rights guaranteed by the Fourteenth Amendment. Craig v. Boren, 429 U.S. 190, 206-09, 97 S.Ct. 451, 461-63, 50 L.Ed.2d 397 (1976); Wisconsin v. Constantineau, supra 400 U.S. at 436, 91 S.Ct. at 509 (1971). A state's power under the Twenty-first Amendment must be considered in the light of the other provisions of the Constitution "in the context of the issues and interests at stake in any concrete case." Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 332, 84 S.Ct. 1293, 1298, 12 L.Ed.2d 350 (1964).
 
 
 37
 In this case, then, we must consider the Twenty-first Amendment in the light of the First Amendment. There is no serious dispute that the advertising here in question is commercial speech, entitled to some degree of protection under the First and Fourteenth Amendments.[7] Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); Bates v. State Bar, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); Linmark Associates, Inc. v. Township of Willingboro, 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977). In interpreting the scope of protection afforded by the First Amendment, however, there is a "common-sense and legal distinction between speech proposing a commercial transaction and other varieties of speech...." Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 506, 101 S.Ct. 2882, 2891, 69 L.Ed.2d 800 (1981) (plurality opinion). Rather than dilute the First Amendment, the Supreme Court has "afforded commercial speech a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of noncommercial expression." Ohralik v. Ohio State Bar Association, 436 U.S. 447, 456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978).
 
 
 38
 Our duty here is to determine whether Oklahoma's laws are a permissible regulation of the Appellees' attenuated First Amendment rights. In doing so, we must bear in mind that the Supreme Court allowed substantially similar regulations, despite similar challenges, in Queensgate. Nevertheless, in view of the holding in Craig v. Boren, supra 429 U.S. at 209, 97 S.Ct. at 463, that the Twenty-first Amendment does not alter the standards otherwise applicable in equal protection cases, we will apply the analysis for determining the validity of regulation of commercial speech articulated by the Supreme Court in Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).
 
 
 39
 In Central Hudson, the Court reiterated that commercial speech is accorded lesser protection under the Constitution than other forms of constitutionally protected expression. Central Hudson, supra at 563, 100 S.Ct. at 2350 (citing Ohralik, supra 436 U.S. at 457, 98 S.Ct. at 1919). According to the Court, the "protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation." Central Hudson, supra 447 U.S. at 563, 100 S.Ct. at 2350. In order to balance those two competing interests, the Court proposed the following four-part analysis:
 
 
 40
 At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.
 
 
 41
 Central Hudson, supra at 566, 100 S.Ct. at 2351.
 
 
 42
 The threshold presented by the first two steps is easily crossed. In all relevant respects, the commercial speech here in question concerns lawful activity. The sale and consumption of alcoholic beverages, though heavily regulated, is lawful within the State of Oklahoma.[8] Nor, despite Crisp's allegations, are the advertisements inherently misleading.[9] The commercial speech here is protected speech under the First Amendment. See Virginia State Board of Pharmacy, supra.
 
 
 43
 The asserted governmental interest of Oklahoma in prohibiting the advertising of alcoholic beverages is to reduce the sale and consumption of liquor, and thereby reduce the problems associated with alcohol abuse. There can be no question that this asserted interest is substantial. Under its general police power, Oklahoma has a legitimate and substantial interest in the health and welfare of its citizens, the safety of its highways, the stability of its families, and the productivity of its work force, all of which are significantly and adversely affected by the abuse of alcohol. Added to this already substantial interest is the power of Oklahoma under the Twenty-first Amendment to regulate the sale, and the incidents thereof, of alcoholic beverages, and to protect its citizens from the evils incident to alcohol. See Ziffrin, supra 308 U.S. at 138-39, 60 S.Ct. at 167. The asserted state interest, therefore, is exceptionally strong.
 
 
 44
 We must next determine whether Oklahoma's laws directly advance its asserted governmental interest. The trial court found that the laws are at best an indirect means of advancing Oklahoma's interest. In particular, the court noted that other means, such as early and continuing education about the dangers of alcohol abuse, were available. In our view, the trial court misconceived the purpose of this inquiry. Central Hudson does not require that we determine whether Oklahoma has chosen the best means to advance its interest; rather, the inquiry is whether the means chosen by the legislature, however objectionable any court may find them, directly advance the asserted state interest.
 
 
 45
 In undertaking this inquiry, we note the approach taken by the plurality in Metromedia in applying the third part of the Central Hudson test: "We likewise hesitate to disagree with the accumulated, common-sense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety. There is nothing here to suggest that these judgments are unreasonable." Metromedia, supra 453 U.S. at 509, 101 S.Ct. at 2893 (footnote omitted). In that case, the appellants argued that there was nothing in the record to show any connection between billboards, which San Diego had essentially prohibited, and traffic safety, one of the asserted governmental interests. The California Supreme Court had held, nevertheless, that as a matter of law the ordinance eliminating billboards was reasonably related to traffic safety. Id. at 508, 101 S.Ct. at 2893. The plurality agreed with that holding. Id. at 509, 101 S.Ct. at 2893.
 
 
 46
 In this appeal, the Appellees similarly argue, and the trial court agreed, that the record does not demonstrate that Oklahoma's laws have any direct effect on the consumption of alcohol. In light of the plurality's language in Metromedia, however, and particularly in light of the additional deference owed to the legislature as a result of the Twenty-first Amendment, Bellanca,[10] supra, we hold, as a matter of law, that prohibitions against the advertising of alcoholic beverages are reasonably related to reducing the sale and consumption of those beverages and their attendant problems. The entire economy of the industries that bring these challenges is based on the belief that advertising increases sales. We therefore do not believe that it is constitutionally unreasonable for the State of Oklahoma to believe that advertising will not only increase sales of particular brands of alcoholic beverages but also of alcoholic beverages generally. The choice of the Oklahoma legislature, and its people with respect to the constitutional provision, is not unreasonable, and does directly advance Oklahoma's interest in reducing the sale, consumption, and abuse of alcoholic beverages.
 
 
 47
 The final inquiry under the Central Hudson test is whether Oklahoma's laws are more extensive than is necessary to serve its interest. The trial court concluded, and Appellees urge, that since with respect to Telecasters and the cable operators all rebroadcasting of alcoholic beverage advertising was prohibited, the laws were more extensive than necessary.
 
 
 48
 Again, the plurality opinion in Metromedia is instructive. In that case, San Diego's ordinance banned virtually all billboards, allowing only on-site advertising and other limited exceptions. According to the stipulated facts in the case, the result of the ordinance was to eliminate completely the outdoor advertising business in San Diego. Metromedia, supra 453 U.S. at 497, 101 S.Ct. at 2887. Nevertheless, noting in particular that on-site advertising and some other signs were specifically exempted from the ordinance, the plurality held that the ordinance was no broader than necessary. Id. at 508, 101 S.Ct. at 2893.
 
 
 49
 We recognize, of course, that the plurality eventually did strike down the ordinance in Metromedia. It did so, however, only on the grounds that the ordinance violated the First Amendment protections for political and other noncommercial speech. Metromedia, supra at 513-17, 101 S.Ct. at 2895-97. The plurality's analysis clearly distinguished between commercial and noncommercial speech. With respect to the commercial speech aspect of the case, the plurality applied the Central Hudson test and found that the ordinance was constitutional. Metromedia, supra at 507-09, 512, 101 S.Ct. at 2891-93, 2895.
 
 
 50
 It is our view, therefore, that Oklahoma's laws also pass the fourth and final test under Central Hudson. Even though Appellees are completely prohibited from rebroadcasting alcoholic beverage advertising, they are free to carry other forms of advertising. We recognize that the cable operators especially are placed in a difficult position; however, nothing in the First Amendment prohibits this result. See Metromedia, supra. On-premises advertising is allowed, the rebroadcast of beer advertising is not prohibited, and alcoholic beverage advertising in out-of-state printed publications distributed in Oklahoma is allowed. Although Appellees bear a disproportionate burden of the regulation, Oklahoma has not eliminated the dissemination of information concerning alcoholic beverages. With particular emphasis on the power of Oklahoma under the Twenty-first Amendment, we hold that the advertising prohibitions here are no more extensive than is necessary to serve Oklahoma's asserted interest. Article XXVII, Sec. 5, of the Oklahoma Constitution, and Section 516 of title 37 of the Oklahoma Statutes, are valid restrictions on commercial speech and do not violate the Appellees' First Amendment rights.
 
 
 51
 We again emphasize that the Central Hudson test is essentially a balancing test. When the Twenty-first Amendment is considered in addition to Oklahoma's substantial interest under its police power, the balance shifts in the state's favor, permitting regulation of commercial speech that might not otherwise be permissible. We believe that the Supreme Court's summary dismissal in Queensgate mandates this result. We order that the permanent injunctions be dissolved and we reverse the district court's summary declaratory judgments.
 
 McKAY, Circuit Judge, concurring:
 
 52
 While I fully concur in the court's opinion, I add this concurring statement to bring out an additional serious consequence of the alternative result. The section under attack in these cases was enacted by a vote of the people at large in a single referendum petition that included not only the regulatory scheme but the surrender by repeal of the Prohibition Ordinance, see Okla.Const., art. XXVII, Secs. 1-11 (1981) (each section composed part of State Question No. 386, Referendum Petition No. 121 which was adopted at election held April 7, 1959), which had stood since statehood as the fundamental law of Oklahoma separately voted on by the people at large. The regulatory package was clearly the quid pro quo for the surrender after decades of dispute of this long held public standard. I have serious doubt that federal courts are at liberty glibly to sever and strike down one section of such an integrated state decision with its long and turbulent history, see Spokane Arcades, Inc. v. Brockett, 631 F.2d 135 (9th Cir.1980), aff'd, 454 U.S. 1022, 102 S.Ct. 557, 70 L.Ed.2d 468 (1981), reh'g denied, 454 U.S. 1165, 102 S.Ct. 1040, 71 L.Ed.2d 322 (1982), without striking down the whole and restoring the status quo ante whether any of the parties would desire such a result.
 
 
 
 [1]
 The equal protection claim was based on the inconsistency between the treatment of the broadcast versus the printed media: newspapers and magazines published outside of Oklahoma, but circulated within the state, are permitted to carry advertisements of alcoholic beverages. The trial court did not reach the issue of equal protection and it is not before us in these appeals
 
 
 [2]
 The regulations provided, in pertinent part:
 No alcoholic beverages shall be advertised in Ohio except in the manner set forth in 4301:1-1-03 and as hereinafter provided.
 (A) As to advertising on the premises, holders of Class C, D, and G permits shall not advertise the price per bottle or drink of any alcoholic beverage, or in any manner refer to price or price advantage except within their premises and in a manner not visible from the outside of said premises.
 (B) Manufacturers and distributors of alcoholic beverages are permitted to advertise their products in Ohio.
 Holders of Class C, D, and G permits shall be authorized to advertise in newspapers of general circulation, radio and television, on bill boards, calendars, in or on public conveyances and in regularly published magazines. Advertising may include the retail price of the original container or packages, but such advertising may not in any manner refer to price advantage.
 Subsequent enactment of law by the 102nd Ohio General Assembly prohibits the advertising of the retail price of beer in any media. See page 6, Section 4301.211 of the Revised Code of Ohio.
 Ohio Adm.Code 4301:1-1-44. See Queensgate, supra at 69 Ohio St.2d 361-62 n. 1, 433 N.E.2d 138.
 
 
 [3]
 The rules of the Supreme Court require a jurisdictional statement which includes "[a] statement of the reasons why the questions presented are so substantial as to require plenary consideration, with briefs on the merits and oral argument, for their resolution." Sup.Ct.R. 15(1)(h). Rule 16 allows the appellee to file a motion to dismiss an "appeal from a state court on the ground that it does not present a substantial federal question...." Sup.Ct.R. 16(1)(b)
 
 
 [4]
 See also Sup.Ct.R. 17(1) ("A review on a writ of certiorari is not a matter of right, but of judicial discretion...); 16 Wright, Miller, Cooper & Gressman, Federal Practice and Procedure Secs. 4003, 4004 & 4011 (1977)
 
 
 [5]
 Mr. Justice Brennan has criticized the rule as giving too much weight to a summary decision made solely on a jurisdictional statement, for a variety of reasons which are not explained in any sort of opinion. See Sidle v. Majors, 429 U.S. 945, 97 S.Ct. 366, 50 L.Ed.2d 316 (1976) (Brennan, J., dissenting from denial of certiorari); Colorado Springs Amusements, Ltd. v. Rizzo, 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1222 (1976) (Brennan, J., dissenting from denial of certiorari). Sitting by designation in the Fourth Circuit, Justice Clark stated that the Hicks rule "fl[ew] in the face" of what he perceived to be the Court's actual practice of according similar treatment and precedential weight to appeals from state courts and petitions for certiorari. 526 F.2d 833, 836 (4th Cir.1975) (Clark, J., concurring), cert. denied, 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1221 (1976)
 
 
 [6]
 See Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 499-500, 101 S.Ct. 2882, 2888-2889, 69 L.Ed.2d 800 (1981) (plurality opinion); Southern Railway Co. v. Seaboard Allied Milling Corp., 442 U.S. 444, 462, 99 S.Ct. 2388, 2398, 60 L.Ed.2d 1017 (1979); Caban v. Mohammed, 441 U.S. 380, 390 n. 9, 99 S.Ct. 1760, 1767 n. 9, 60 L.Ed.2d 297 (1979); Washington v. Confederated Bands and Tribes of the Yakima Indian Nation, 439 U.S. 463, 477 n. 20, 99 S.Ct. 740, 749 n. 20, 58 L.Ed.2d 740 (1979); Mandel v. Bradley, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977) (per curiam); Tully v. Griffin, Inc., 429 U.S. 68, 74, 97 S.Ct. 219, 223, 50 L.Ed.2d 227 (1976)
 
 
 [7]
 Crisp belatedly argues that the advertisements here are "inherently misleading" and therefore properly prohibited. See In re R.M.J., 455 U.S. 191, 202, 102 S.Ct. 929, 937, 71 L.Ed.2d 64; Friedman v. Rogers, 440 U.S. 1, 15-16, 99 S.Ct. 887, 897, 59 L.Ed.2d 100 (1979); Ohralik v. Ohio State Bar Association, 436 U.S. 447, 462, 98 S.Ct. 1912, 1921, 56 L.Ed.2d 444 (1978). Irrespective of whether that argument is properly before us, it is clear that Oklahoma's laws are not aimed at preventing deceptive or misleading advertising. Indeed, if they were, they would be in danger of being struck down as being more extensive than reasonably necessary. See, e.g., In re R.M.J., supra 455 U.S. at 207, 102 S.Ct. at 940. The purpose of Oklahoma's laws is to prevent the excessive consumption of alcohol. For purposes of determining the constitutionality of the laws in that context, we are willing to accept the trial court's finding that the advertising is truthful
 
 
 [8]
 Crisp argues that some of the advertising displays conduct which would be unlawful in Oklahoma. First, we do not consider it significant that a nationally broadcast advertisement may show conduct, such as drinking wine in public, which is unlawful in Oklahoma. The purpose of the advertisement is to sell wine, which may be done lawfully in Oklahoma, not to encourage public drinking in violation of the laws of Oklahoma. Secondly, if Oklahoma's true purpose were to prevent only such advertising, the laws again are far more extensive than necessary
 
 
 [9]
 See footnote 7, supra. Indeed, the qualities that Crisp alleges make these wine commercials "inherently misleading"--the commercials tend to project an image of wine drinkers as successful, fun-loving people, without warning of the dangers of alcohol--are present in the advertising of almost any product from automobiles to snack foods. The Supreme Court's concern with "inherently misleading" advertising is directed towards advertising methods which tend to encourage fraud, overreaching, or confusion, such as some forms of lawyer solicitation. See Ohralik, supra 436 U.S. at 462, 98 S.Ct. at 1921. As to advertising in general, the Supreme Court has rejected a paternalistic approach in favor of assuming "that people will perceive their own best interests..." if the channels of communication are left open. Virginia State Board of Pharmacy, supra 425 U.S. at 770, 96 S.Ct. at 1829
 
 
 [10]
 The regulations in question in Bellanca prevented nude dancing in establishments which sold liquor for on-premises consumption. Despite the fact that the regulation played a different role in New York's alcoholic beverage regulatory scheme than the laws here, we find the following language instructive:
 Whatever artistic or communicative value may attach to topless dancing is overcome by the State's exercise of its broad powers arising under the Twenty-first Amendment. Although some may quarrel with the wisdom of such legislation and may consider topless dancing a harmless diversion, the Twenty-first Amendment makes that a policy judgment for the state legislature, not the courts.
 Bellanca, supra 452 U.S. at 718, 101 S.Ct. at 2601.