**OKLAHOMA BROADCASTERS ASSOCIATION, et al., and Oklahoma Press Association, et al., Plaintiffs,**

**and**

**Flip's Restaurants, Inc., Intervenor,**

v.

**Richard A. CRISP, Director, Alcoholic Beverage Control Board, Defendant.**

**Nos. CIV–81–1756–W, CIV–82–44–W.**

United States District Court,
W.D. Oklahoma.

Oct. 1, 1985.

Opinion May 30, 1986.

Robert D. Nelon, Roy J. Davis, L. Gene Gist, Andrews Davis Legg Bisler Milsten & Murrah, Jerry D. Sokolosky, Larry D. Bishop, Robert Nelon, W.J. Winterstein Jr., Wright, Johnson & Winterstein, Oklahoma City, Okl., for plaintiffs.

Richard Mildren, Jan Eric Cartwright, Atty. Gen., Gary W. Gardenhire, Michael C. Conaway, Judith Coleman Nichols, Edward Sadowsky, Lynn Barnett, Asst. Attys. Gen., Oklahoma City, Okl., for defendant.

Larry Derryberry, Derryberry & Duncan, Oklahoma City, Okl., S.A.N.E., Inc., amicus curiae.

## ORDER

LEE R. WEST, District Judge.

### Introduction

Richard A. Crisp[1] ("Crisp") moves for partial summary judgment on the First Amendment claims asserted by Oklahoma Broadcasters Association, et al., and Oklahoma Press Association, et al. (collectively, the "Advertisers"). Crisp's motion was filed and briefed by the parties prior to the intervention of Flip's Restaurants, Inc. ("Flip's"). Therefore, this order addresses only the First Amendment claims asserted by the Advertisers. The Court expresses no opinion as to the validity of any claim Flip's may assert.

The question presented by Crisp's motion is whether Oklahoma's prohibition on the advertising of alcoholic beverages violates Advertisers' First Amendment right of commercial speech.

### Advertisers' Complaints and Crisp's Motion

Advertisers, a menagerie of the media industry (radio and television broadcasters, newspaper publishers, billboard and sign advertisers), seek to advertise alcoholic beverages in Oklahoma. Recognizing that Oklahoma's Constitution and statutes prohibit such advertising, Advertisers filed complaints requesting this Court declare unconstitutional Oklahoma's prohibition on alcoholic beverage advertising. Advertisers claim the prohibition violates, among other things, their right of commercial speech as guaranteed by the First Amendment of the United States Constitution. Crisp moves for summary judgment on Advertisers' commercial speech claim. Crisp urges that Oklahoma's interest under its police power to protect the health and welfare of its citizens against the problems associated with alcohol abuse, combined with its powers under the Twenty-first Amendment of the United States Constitution to regulate alcoholic beverages, outweigh Advertisers' interest in commercial speech.

### Oklahoma's Prohibition On Alcoholic Beverage Advertising and Advertisers' Right of Commercial Speech

The Oklahoma Constitution stringently restricts the advertising of alcoholic beverages. Okla. Const. art. XXVIII (added by State Question No. 563, Initiative Petition No. 319, adopted at election held on September 18, 1984) provides in relevant part:

It shall be unlawful for any person, firm, or corporation to advertise the sale of alcoholic beverages within the State of Oklahoma, except by a sign at retail package stores bearing the words "Retail Alcoholic Liquor Store."

Okla. Const. art. XXVIII, § 5.[2] Oklahoma's statutes also prohibit the advertising of "... alcoholic beverages or the sale of the same within the State of Oklahoma," except by strictly regulated on-premises signs. Okla.Stat. tit. 37, § 516 (1981).[3]

Advertisers claim that Oklahoma's prohibition violates their right of commercial speech, guaranteed by the First Amendment and applied to the states under

---

1. At the time these consolidated actions were filed, the Oklahoma Alcoholic Beverage Control Board had primary responsibility for the enforcement of Oklahoma's laws regulating the sale, consumption and advertisement of alcoholic beverages. The successor to the Oklahoma Alcoholic Beverage Control Board is the Alcoholic Beverage Laws Enforcement Commission, also known as the ABLE Commission. 1985 Okla.Sess.Law Serv. Ch. 6 § 6(A) (West), [To be codified as Okla.Stat. tit. 37, § 506.1 (Supp. 1985) ].

2. Virtually the identical language was found in Okla. Const. art. XXVII, § 5, repealed by State Question No. 563, Initiative Petition No. 319, adopted at election held on September 18, 1984.

3. The Oklahoma Alcoholic Beverage Control Act defines "alcoholic beverage" as "... alcohol,

the Fourteenth Amendment. There is no doubt that the speech at issue in this case, advertising pure and simple, falls within the bounds of commercial speech. *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,* —— U.S. ——, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985). The commercial speech doctrine rests heavily on the "common sense" distinction between speech proposing a commercial transaction and other varieties of speech. *Bolger v. Youngs Drug Products Corp.,* 463 U.S. 60, 64, 103 S.Ct. 2875, 2878, 77 L.Ed.2d 469 (1983). The protection afforded commercial speech is less extensive than that afforded noncommercial speech. States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading, or that proposes an illegal transaction. However, commercial speech that is not false, deceptive, or misleading or that does not concern unlawful activity may only be restricted, pursuant to *Central Hudson Gas and Electric Corp. v. Public Service Commission,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980) *("Central Hudson ")*, in the service of a substantial government interest, and only through means that directly advance that interest. *Zauderer,* —— U.S. ——, 105 S.Ct. at 2275.

*The Battle Revisited ... Balancing Oklahoma's Interest In Reducing Alcohol Abuse Through Its Prohibition on Alcoholic Beverage Advertising Against Advertisers' Right of Commercial Speech: The Central Hudson Test*

In determining whether Crisp's motion should be granted, it is necessary to review prior decisions of this Court, the Tenth Circuit, and the Supreme Court concerning Oklahoma's prohibiton on alcoholic beverage advertising and Advertisers' right of commercial speech. In *Cable Com-General, Inc., et al. v. Crisp,* CIV–81–290–W (W.D.Okla.1981), and *Oklahoma Telecasters Association, et al. v. Crisp,* CIV–81–439–W (W.D.Okla.1981), cable television operators and television broadcasters brought separate suits against Crisp. The plaintiffs in those cases sought a declaratory judgment that Oklahoma's then existing laws prohibiting alcoholic beverage advertising, Okla. Const. Art. XXVII, § 5 and Okla. Stat. tit. 37, § 516 (1981), violated their rights of commercial speech and equal protection. In addition to the declaratory judgment, plaintiffs requested Crisp be permanently enjoined from enforcing Oklahoma's prohibition.

This Court, while not reaching the equal protection issue, granted summary judgment in favor of the cable television operators and the television broadcasters, ruling that the power to regulate alcoholic beverages granted to states by the Twenty-First Amendment to the United States Constitution,[4] did not override the cable television operators' and television broadcasters' right of commercial speech. In so holding this Court applied the four part test the Supreme Court prescribed in *Central Hudson,* 447 U.S. at 566, 100 S.Ct. at 2351, for determining the validity of the regulation of commercial speech:

(1) Is the commercial speech protected by the First Amendment; that is, does it

spirits, beer, and wine ... but does not include nonintoxicating beverages as that term is defined in section 163.2 of this title." 1985 Okla. Sess.Law Serv. Ch. 6 § 5 (West) [To be codified as Okla.Stat. tit. 37 § 506(3) (Supp.1985) ]. Section 163.2 defines "nonintoxicating beverages" as beverages containing not more than three and two-tenths per cent (3.2%) alcohol by weight. Okla.Stat. tit. 37 § 163.2 (1981). The act defines "beer" as only those beverages "... containing more than three and two-tenths percent (3.2%) of alcohol by weight...." 1985 Okla.Sess.Law Serv. Ch. 6 § 5 (West) [To be codified as Okla.Stat. tit. 37 § 506(4) (Supp. 1985) ]. Since beer can contain 3.2% alcohol or less, it appears that Oklahoma would permit the advertising of beer. Okla. Const. art. XXVIII, § 2; *Oklahoma Telecasters Ass'n. v. Crisp,* 699 F.2d 490, 493 (10th Cir.1983), *rev'd on other grounds sub nom. Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984). In any event, the advertising of wine and other alcoholic beverages within Oklahoma is prohibited.

4. U.S. Const. Amend. XXI, § 2 provides:
"The transportation or importation into any State, territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

concern lawful activity and is not misleading?

(2) Is the asserted government interest substantial?

(3) Does the regulation directly advance the government interest asserted?

(4) Is the regulation more extensive than necessary to serve the governmental interest?

In applying the *Central Hudson* test to the facts of those cases, this Court held that Oklahoma passed the first two parts of the test:

(1) The cable television operators' and television broadcasters' right to advertise alcoholic beverages is commercial speech protected by the First Amendment.

(2) Oklahoma's asserted interest, protecting its citizens from the dangers of alcohol abuse, is substantial. Alcohol abuse threatens the safety of highways, the stability of families, and the health of the public.

However, this Court held that Oklahoma failed to pass the third and fourth part of the test:

(3) Oklahoma's prohibition on alcoholic beverage advertising does not directly advance the governmental interest asserted. The prohibition is, at best, an indirect means of advancing the state's interest.

(4) Oklahoma's prohibition on alcoholic beverage advertising is more extensive than necessary to serve the governmental interest. As to the cable television operators and television broadcasters, the regulation is not one of time, place, and manner, but a total prohibition on such advertising.

Since Oklahoma's prohibition failed to pass the *Central Hudson* test, this Court entered declaratory judgments that enforcement of Oklahoma's laws prohibiting alcoholic beverage advertising would violate the cable television operators' and television broadcasters' rights of commercial speech as guaranteed by the First Amendment. Crisp, in his official capacity as director of the Oklahoma Alcoholic Beverage Control Board, was permanently enjoined from enforcing the laws prohibiting alcoholic beverage advertising against the cable television operators and the television broadcasters.

Crisp appealed. In *Oklahoma Telecasters Ass'n. v. Crisp*, 699 F.2d 490 (10th Cir.1983), *rev'd on other grounds sub. nom., Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984), the Tenth Circuit, after first consolidating the appeals, reversed this Court's declaratory judgments and ordered the permanent injunctions dissolved. In balancing the right of Oklahoma to regulate advertising of alcoholic beverages against the right of the cable television operators and the television broadcasters to engage in commercial speech, the Tenth Circuit applied the same *Central Hudson* test as did this Court, but reached a different result. The Tenth Circuit found that:

(1) The cable television operators' and television broadcasters' right to advertise alcoholic beverages is commercial speech protected by the First Amendment.

(2) Oklahoma's asserted governmental interest in prohibiting the advertising of alcoholic beverages is to reduce the sale and consumption of liquor, and thereby reduce the problems associated with alcohol abuse. The Tenth Circuit found this asserted interest not only substantial, but "exceptionally strong." *Oklahoma Telecasters Ass'n.*, 699 F.2d at 500.

(3) The Tenth Circuit viewed the third step of the *Central Hudson* analysis as an inquiry into whether the means chosen by Oklahoma, however objectionable any court may find them, directly advance the asserted state interest. The Tenth Circuit held, as a matter of law, that the prohibition against advertising of Oklahoma beverages is reasonably related to reducing the sale, consumption, and attendant problems of those beverages and that the prohibition directly advances the government interest asserted.

(4) Finally, the Tenth Circuit held that the advertising prohibition was no more extensive than necessary to serve Oklahoma's asserted interest. While the cable

television operators and television broadcasters were completely prohibited from advertising alcoholic beverages, they remained free to carry other forms of advertising.

The Tenth Circuit concluded that Oklahoma's prohibition on alcoholic beverage advertising passed the *Central Hudson* test, that the prohibition is a valid restriction on commercial speech, and that it does not violate the cable television operators' and television broadcasters' right of commercial speech. "When the Twenty-First Amendment is considered in addition to Oklahoma's substantial interest under its police powers, the balance shifts in the state's favor, permitting regulation of commercial speech that might not otherwise be permissible." *Oklahoma Telecasters Ass'n.*, 699 F.2d at 502.

The television broadcasters chose not to appeal. They are now bound by the Tenth Circuit's mandate. The cable television operators appealed. In *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984), the Supreme Court reversed the Tenth Circuit's decision, holding that Oklahoma's prohibition on alcoholic beverage advertising, as applied to out-of-state signals carried by cable television operators in Oklahoma, is pre-empted by federal law regulating cable television systems and that the Twenty-First Amendment does not save the prohibition from pre-emption. In reaching its narrow holding, the Supreme Court expressly declined to address the issue of whether Oklahoma's prohibition violated the cable television operators' right of commercial speech:

> Because we have resolved the pre-emption and Twenty-First Amendment issues in petitioners' favor, we need not consider the additional question whether Oklahoma's advertising ban constitutes an invalid restriction on protected commercial speech, and we therefore express no view on that issue.

*Id.* at ——, n. 16, 104 S.Ct. at 2709.

### The Continuing Validity of Oklahoma Telecasters Ass'n.

■ Since the Supreme Court declined to address the commercial speech issue in *Capital Cities*, it appears that the Tenth Circuit's disposition of the commercial speech issue is still valid. In their effort to avoid the inevitable result of *Oklahoma Telecasters Ass'n.*, Advertisers argue that the Tenth Circuit's decision is no longer valid in light of more recent Supreme Court cases: *Capital Cities*, 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984); *Zauderer*, —— U.S. ——, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985); and *Bolger*, 463 U.S. 60, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983). Advertisers cite selected passages from *Capital Cities* for the proposition that the Tenth Circuit gave undue weight to Oklahoma's power under the Twenty-First Amendment in its analysis of the last two parts of the *Central Hudson* test. This Court is well aware of the Supreme Court's comments in *Capital Cities*. If those comments are viewed as precedent, then the balancing of interests may shift in favor of the Advertisers' right of commercial speech. However, since the Supreme Court declined to address the commercial speech issue, these comments may be no more than mere *dicta*. Where the Supreme Court declines to address an issue of law decided by the Tenth Circuit, this Court is duty-bound to follow the Tenth Circuit. Further, the Tenth Circuit's decision upholding Oklahoma's prohibition on alcoholic beverage advertising is supported by an *en banc* decision by the Fifth Circuit, which upheld Mississippi's prohibition on alcoholic beverage advertising against a similar commercial speech challenge. *Dunagin v. City of Oxford, Miss.*, 718 F.2d 738 (5th Cir.1983)—*(en banc), cert. denied*, 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984). As for *Zauderer* (attorney advertising) and *Bolger* (contraceptive advertising), neither addresses alcoholic beverage advertising nor the state's enhanced power under the Twenty-First Amendment. Unless and until the Tenth Circuit changes its opinion, *Oklahoma Telecasters Ass'n.* is valid and binding on this Court.

Finally, plaintiffs argue that the facts as to the directness and restrictiveness of

Oklahoma's prohibition on alcohol advertising are disputed, thus precluding summary judgment. The Court finds this argument unpersuasive. The Tenth Circuit held, as a matter of law, that Oklahoma's prohibition on alcoholic beverage advertising is reasonably related to reducing the sale and consumption of alcoholic beverages and their attendant problems and that Oklahoma's prohibition directly advances Oklahoma's asserted interest. *Oklahoma Telecasters Ass'n.*, 699 F.2d at 501. The Tenth Circuit also held that Oklahoma's prohibition is no more extensive than necessary to serve Oklahoma's asserted interest because advertisers are free to carry other forms of advertising. *Id.* at 502. Therefore, there is no genuine issue as to any material fact that would preclude summary judgment. Fed.R.Civ.P. 56(c).

## CONCLUSION

The Tenth Circuit's opinion in *Oklahoma Telecasters Ass'n.* is valid and binding on this Court. Crisp's motion for partial summary judgment on Advertisers' First Amendment commercial speech claim is GRANTED.

## OPINION

This case involves a constitutional challenge to Oklahoma's prohibition on alcoholic beverage advertising. Plaintiffs and intervenor seek a declaratory judgment that Oklahoma's advertising ban, as applied, violates the First and Fourteenth Amendments of the United States Constitution. Plaintiffs and intervenor request the Court permanently enjoin Oklahoma from enforcing its prohibition on alcoholic beverage advertising.

### Background

In 1981 and 1982, separate complaints were filed by plaintiffs Oklahoma Broadcasters Association, et al. and Oklahoma Press Association, et al. against defendant Crisp in his official capacity as Director of Oklahoma's Alcoholic Beverage Control Board, and his and its successors (hereinafter, Crisp shall be referred to as "Okla-

homa"). Pursuant to 28 U.S.C. § 2201, plaintiffs requested the Court render a declaratory judgment that Oklahoma's laws prohibiting alcoholic beverage advertising, Okla. Const. art. XXVII, § 5 (now, Okla. Const. art. XXVIII, § 5) and Okla.Stat. tit. 37, § 516 (1981) violate plaintiffs' right of commercial free speech, guaranteed by the First Amendment, and equal protection, guaranteed by the Fourteenth Amendment. Plaintiffs also requested that Oklahoma be permanently enjoined from enforcing its laws prohibiting alcoholic beverage advertising. The complaints have been consolidated for all purposes.

By order of September 11, 1985, the Court granted intervenor Flip's Restaurants, Inc. leave to intervene. Intervenor's complaint seeks similar declaratory and injunctive relief.

On October 1, 1985, the Court granted Oklahoma's motion for partial summary judgment, holding that Oklahoma's interest under its police powers to protect the health and welfare of its citizens against the problems associated with alcohol abuse, combined with Oklahoma's powers under the Twenty-First Amendment of the United States Constitution to regulate alcoholic beverages, outweigh plaintiffs' right of commercial free speech, which is granted only limited protection by the First Amendment. *See Oklahoma Telecasters Ass'n. v. Crisp*, 699 F.2d 490 (10th Cir.1983), ("*Oklahoma Telecasters*"), *rev'd. on other grounds sub nom., Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984) and *Dunagin v. City of Oxford, Miss.*, 718 F.2d 738 (5th Cir. 1983) (*en banc*), *cert. denied*, 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984) ("*Dunagin*"). At that time, the Court expressed no opinion as to the validity of any claim asserted by intervenor, as it had only recently intervened. However, intervenor has failed to participate in this case since October 23, 1985. Intervenor did not join in the stipulations filed on December 23, 1985 and has failed to file any briefs, even though ordered by the court to do so (Order of December 30, 1985). Accordingly,

intervenor is DISMISSED for failure to prosecute its claims and for failure to obey the Court's order.

The only issue left for decision is whether Oklahoma's ban on alcoholic beverage advertising violates plaintiffs' right of equal protection of the laws, guaranteed by the Fourteenth Amendment of the United States Constitution. This opinion constitutes the Court's findings of fact[1] and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

## FINDINGS OF FACT

1. The parties have stipulated that Oklahoma Broadcasters Association (now, Oklahoma Association of Broadcasters) is an Oklahoma corporation comprised of 100 radio and television stations doing business in Oklahoma. The Oklahoma Press Association is an Oklahoma corporation comprised of 256 Oklahoma newspapers publishing within the State of Oklahoma. The Outdoor Advertising Association of Oklahoma is an Oklahoma corporation comprised of 18 outdoor advertisers doing business within the State of Oklahoma.

2. The parties have stipulated that the businesses of the broadcasters, the press, and the outdoor advertisers are supported in part by sale of advertising to private businesses and individuals in and out of the State of Oklahoma.

3. The parties have stipulated that certain advertising matter carried, printed, or displayed by the plaintiffs is about alcoholic beverages.

4. The parties have stipulated that the Alcoholic Beverage Laws Enforcement ("ABLE") Commission is the state agency now constitutionally charged with the regulation of alcoholic beverages in Oklahoma.

5. The parties have stipulated that the State of Oklahoma deems the plaintiffs subject to prosecution should they broadcast, print, or display alcoholic beverage advertising.

6. The parties have stipulated that the State of Oklahoma does not deem subject to prosecution beer advertising appearing in any medium. The alcoholic beverage product depicted in this advertising cannot be distinguished as either 3.2% beer or greater than 3.2% beer, but could be either or both.

7. The parties have stipulated that Oklahoma allows certain kinds of information concerning alcoholic beverages to be distributed through commercial channels. Manufacturers and distillers are permitted: (a) normal packaging of their products, regardless of the information on such products; (b) to have listings in the yellow or white pages of telephone directories, and (c) to circulate new product pamphlets to wholesalers and retailers. Wholesalers are permitted the same telephone directory listings, are permitted to submit price lists to retailers who are customers or upon request, and may place their business names and addresses on their trucks, to which they must fix their licensing number from the ABLE Commission.

8. The parties have stipulated that print and broadcast advertising of alcoholic beverages published or broadcast outside the State of Oklahoma is not deemed subject to prosecution by the State of Oklahoma. No publication printed within the State of Oklahoma for national distribution, including Oklahoma, is deemed subject to prosecution by the State of Oklahoma if significant publishing and editorial processes or decision-making occur outside the State of Oklahoma.

9. The parties have stipulated that no alcoholic beverage advertisements appearing on signals distributed by cable television are deemed subject to prosecution by the State of Oklahoma.

10. The parties have stipulated that the State of Oklahoma does not deem subject to prosecution those persons who sell, cir-

---

1. On December 23, 1985, plaintiffs and Oklahoma entered into stipulations of fact. The stipulations are so numerous that they fill an entire storage box. Accordingly, only those stipulations most pertinent to disposition of the case are repeated in this opinion. The stipulations are taken as true solely for purposes of this action, and only as between these parties.

culate or distribute in Oklahoma national or regional publications containing alcoholic beverage advertising which are transported into Oklahoma for distribution.

11. The parties have stipulated that the State of Oklahoma does not deem subject to prosecution any of the following publications or broadcasts:

a. Commercial advertising of products and services in which the presence or use of alcoholic beverages is incidental to the product or service being advertised. Recent examples include television commercials for Western Airlines, American Express credit cards, and LeMenu frozen dinner products.

b. Commercial advertising for alcohol treatment services. Recent examples are the television and radio commercials about services offered by Schnick Hospital and by Presbyterian Hospital in Oklahoma City.

c. Informational materials about alcoholic beverage products. Recent examples are an article entitled "Friendly Spirits" in the November 1985 issue of Ambassador Magazine, the in-flight publication available to all TWA passengers arriving in or departing from Oklahoma, and an insert to the November 1985 issue of Esquire Magazine entitled: " 'Cheers' A Guide to Fearless Holiday Entertaining."

d. Fictional or humorous materials in which the use of alcoholic beverages is depicted. Recent examples are numerous episodes of "M*A*S*H" reruns on Oklahoma television stations and the "Okay City" cartoon strip by Steve Hill in the December 4, 1985, issue of Oklahoma Gazette.

e. News and feature stories involving alcoholic beverages or implying their use.. Recent examples include television news coverage in metropolitan areas about liquor-by-the-drink election results, in which videotape of local restaurants or clubs show alcoholic beverages being mixed or served; and the photo feature on the Oklahoma Museum of Art showing, "Memphis Milano", appearing in the December 4, 1985, issue of the Oklahoma Gazette.

12. The parties have stipulated that the asserted state interest of the State of Oklahoma in enforcing its liquor advertising prohibitions as written and as actually enforced is to prevent the artificial stimulation of demand resulting in increased overall consumption of alcoholic beverages and alcohol-related abuses.

13. The parties have stipulated that a substantial majority of cross-sectional statistical studies purporting to determine whether alcoholic beverage advertising affects consumption levels of alcoholic beverages conclude that alcoholic beverage advertising does not affect overall consumption levels of alcoholic beverages. The minority view as represented by the Atkins & Block 1981 study suggests that alcoholic beverage advertising affects consumption of alcoholic beverages positively but it does not purport to determine effect on consumption in a statistically conclusive way. The study itself noted that the data collected for that study could not be extrapolated to the general population and the design of the study prevents cause and effect from being inferred.

14. The parties have stipulated that experts agree that longitudinal studies measuring the long term effect of alcoholic beverage advertising on overall consumption have never been successfully conducted.

15. The parties have stipulated that alcoholic beverage advertising does not expressly urge individuals to become problem drinkers. The parties have further stipulated that a review of the literature concerning the quantitative effect of alcoholic beverage advertising on consumption and abuse of alcoholic beverages reveals nothing to indicate a positive correlation between alcoholic beverage advertising and abuse or misuse of those products.

16. The parties have stipulated that significant numbers of magazines and newspapers published outside of Oklahoma but circulated within the state contain alcoholic beverage advertising.

17. The parties have stipulated that Oklahoma has approximately 1,252,000 television households.

18. The parties have stipulated that radio and television signals transmitted over the air by satellite which originate in states other than Oklahoma and which carry alcoholic beverage advertising are received in Oklahoma.

19. The parties have stipulated that there are approximately 32 radio stations in neighboring states which are within one hundred miles of the Oklahoma border and have the capacity to transmit into Oklahoma.

20. The parties have stipulated that air waves transmitted by out-of-state radio and television stations directed toward Oklahoma cannot practicably be blocked before their reception by Oklahoma listeners and viewers.

21. The parties have stipulated that thirteen counties in Oklahoma, representing 143,900 television households, are within the established Area of Dominant Influence (ADI) of television stations located in Kansas, Arkansas, Louisiana, or Texas. Those out-of-state television stations are permitted to and do broadcast network and local advertising for alcoholic beverages.

22. The parties have stipulated that an additional forty counties in Oklahoma, representing 891,800 television households, are in areas in which television stations located in Kansas, Arkansas, Louisiana or Texas are viewed to a significant extent.

23. The parties have stipulated that nationally, approximately 40% of the television households are served by cable television systems. In Oklahoma, there are 568,549 households presently served by cable systems based in Oklahoma, approximately 45.4% of all television households in the state. In some geographical areas of Oklahoma, cable serves as much as approximately 98% of the television households within the area served by a cable system. On average, a cable television system in Oklahoma serves approximately 62.9% of the television households within its area of service.

24. The parties have stipulated that virtually all cable television systems licensed or franchised to operate in Oklahoma carry the WTBS signal which originates in Atlanta, Georgia, and is transmitted to Oklahoma via satellite. WTBS regularly carries alcoholic beverage advertising.

25. The parties have stipulated that most cable television systems licensed or franchised to operate in Oklahoma also carry one or more other "distant signals," such as CNN, ESPN, WGN, WOR, or others. The television networks or stations generating these distant signals regularly carry alcoholic beverage advertising.

26. The parties have stipulated that cable television operators import not only distant network and "superstation" signals but also distant signals from surrounding states. As a result, Oklahoma cable television systems often import signals from television broadcasting stations located in Kansas, Missouri, Arkansas, and Texas. Many of these distant broadcast signals retransmitted by Oklahoma-based cable systems contain alcoholic beverage advertising.

27. The parties have stipulated that approximately 85% of radio stations in Oklahoma use syndicated music, news, weather, sports, or commercial programming received by satellite. Many of the programming syndicators, such as AP, UPI, and Satellite Music Network, provide advertising as part of the programming package. This advertising regularly includes alcoholic beverage advertising. Syndication agreements generally prohibit deletion of advertising or other parts of the programming package and such deletion of advertising or other parts of the programming package and such deletion is not presently done by radio stations because of limited personnel and the absence of any established mechanism to advise each radio station when a specific type of advertising, such as for an alcoholic beverage, is included in the programming.

28. The parties have stipulated that attempts in other jurisdictions to reduce or control the levels of consumption of alcoholic beverages through advertising bans have failed. In British Columbia, a fourteen month ban on advertising alcoholic beverages in print and on electronic media had no effect on per capita consumption. Similarly, a removal of beer advertising from print and electronic media in Manitoba had no effect on per capita consumption.

29. The parties have stipulated that efforts among Scandanavian and Eastern European countries and in the Soviet Union to control consumption levels or abuse of alcoholic beverages through bans on advertising have failed.

30. The parties have stipulated that a study of alcohol abuse in Oklahoma, the 1979 Kerr Foundation Report and Recommendations of the Task Force on Alcohol Abuse, made no mention of advertising of alcoholic beverages as a factor in alcohol abuse and did not recommend a limitation or ban on advertising among the seven recommendations it made for prevention and treatment of alcohol-related problems in Oklahoma.

31. The parties have stipulated that on February 7, 1985, the Subcommittee on Alcoholism and Drug Abuse of the United States Senate Committee on Labor and Human Services, chaired by Senator Paula Hawkins (R–Fla.), conducted a hearing to question the relationship, if any, between alcohol product advertising and alcoholism, alcohol abuse, drunk driving and underage consumption. Senator Hawkins reported to the Senate that her "subcommittee could not find evidence to conclude advertising influences non-drinkers to begin drinking or to increase consumption.... Our subcommittee record contains no facts which would justify legislation to ban, censor advertising of beer and wine products, or to require counteradvertising."

32. The parties have stipulated that on March 6, 1975, the staffs of the Federal Trade Commission's Bureaus of Consumer Protection and Economics issued their report recommending denial of a petition filed by the Center for Science in the Public Interest, along with twenty-eight other organizations and three individuals, which requested a number of FTC-imposed remedies with respect to alcoholic beverage advertising and marketing including a ban on alcoholic beverage advertising. In forwarding their staffs' report to the Commission, the two Bureau directors informed the FTC that the staffs "had found no reliable basis to conclude that alcohol advertising significantly affects consumption, let alone abuse."

33. The parties have stipulated that peer pressure and the home environment are major influences on drinking behavior.

34. The parties have stipulated that unlike cigarettes, moderate use of alcohol poses no health hazard to members of the general public who consume alcoholic beverages.

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1343, and 2201, and 42 U.S.C. § 1983. The Court has personal jurisdiction over the parties. Venue is proper under 28 U.S.C. § 1391.

Oklahoma permits the sale and consumption of alcoholic beverages. Okla. Const. art. XXVIII and Okla.Stat. tit. 37 (1981 and Supp.1985). At the same time, Oklahoma prohibits advertising of alcoholic beverages. Oklahoma's Constitution provides:

It shall be unlawful for any person, firm or corporation to advertise the sale of alcoholic beverages within the State of Oklahoma, except by a sign at retail package stores bearing the words "Retail Alcoholic Liquor Store." Okla. Const. art. XXVIII, § 5.[2]

Oklahoma's statutes similarly prohibit the advertising of:

"... alcoholic beverages or the sale of the same within the State of Oklahoma,"

---

2. Virtually the identical language was found in Okla. Const. art, XXVII, § 5, repealed by State

Question No. 563, Initiative Petition No. 319, adopted at election held on September 18, 1984.

except by strictly regulated on-premises signs.[3]

Oklahoma's prohibition on alcoholic beverage advertising is facially neutral. Everyone is prohibited from advertising alcoholic beverages. No classification of persons is singled out for disparate treatment. However, a law nondiscriminatory on its face may be grossly discriminatory in its operation. *Williams v. Illinois,* 399 U.S. 235, 242, 90 S.Ct. 2018, 2022, 26 L.Ed.2d 586 (1970). Plaintiffs contend that Oklahoma's advertising ban, as applied, divides the media into two classes: (1) out-of-state advertisers who can advertise alcoholic beverages to Oklahomans, and (2) in-state advertisers who cannot.[4] Plaintiffs contend that such a classification is arbitrary, irrational, and a violation of the Equal Protection Clause of the United States Constitution.

### The Equal Protection Clause and the Standard of Review

The Equal Protection clause provides: No state shall ... deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amend. XIV, § 1.

In *Cleburne v. Cleburne Living Center,* — U.S. —, 105 S.Ct. 3249, 87 L.Ed.2d 313, 320–321 (1985), the Supreme Court elaborated on the meaning of the Equal Protection Clause and the various standards of review:

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *Plyler v. Doe,* 457 US 202, 216, 72 L Ed 2d 786, 102 SCt 2382 [2394] (1982). Section 5 of the Amendment empowers Congress to enforce this mandate, but absent controlling congressional direction, the courts have themselves devised standards for determining the validity of state legislation or other official action that is challenged as denying equal protection. The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *Schweiker v Wilson,* 450 US 221, 230, 67 LEd2d 186, 101 SCt 1074 [1080] (1981); *United States Railroad Retirement Board v Fritz,* 449 US 166, 174–175, 66 LEd2d 368, 101 SCt 453 [459–460] (1980); *Vance v. Bradley,* 440 US 93, 97, 59 LEd2d 171, 99 SCt 939 [942] (1979); *New Orleans v Dukes,* 427 US 297, 303, 49 LEd2d 511, 96 SCt 2513 [2516] (1976). When social or economic legislation is at issue, the Equal Protection Clause allows the states wide latitude, *United States Railroad Retirement Board v. Fritz, supra,* at 174, 66 LEd2d 368, 101 SCt 453 [459]; *New Orleans v Dukes, supra,* at 303, 49 LEd2d 511, 96 SCt 2513 [2516], and the

**3.** Okla.Stat. tit. 37, § 516 (1981). The Oklahoma Alcoholic Beverage Control Act defines "alcoholic beverage" as "... alcohol, spirits, beer, and wine ... but does not include nonintoxicating beverages as that term is defined in section 163.2 of this title." Okla.Stat. tit. 37, § 506(3) (Supp.1985). Section 163.2 defines "nonintoxicating beverages" as beverages containing not more than three and two-tenths per cent (3.2%) alcohol by weight. Okla.Stat. tit. 37, § 163.2 (1981). The act defines "beer" as only those beverages "... containing more than three and two-tenths percent (3.2%) of alcohol by weight...." Okla.Stat. tit. 37, § 506(4) (Supp. 1985).

**4.** In addition to their own rights, plaintiffs assert that Oklahoma's prohibition on alcoholic beverage advertising violates the equal protection rights of the prospective receivers of the

advertising, Oklahoma consumers. Plaintiffs contend that Oklahoma consumers are divided into classes based on economic status (Oklahomans who can afford to subscribe to cable television or out-of-state publications that carry alcoholic beverage advertisings) and geographic location (Oklahomans who live near Oklahoma's borders and therefore are able to receive radio and television broadcasts from stations in neighboring states that carry alcoholic beverage advertising). Plaintiffs also contend that Oklahoma's ban is overinclusive in that it prevents nondrinkers and drinkers who do not abuse alcohol from receiving alcoholic beverage advertising. However, plaintiffs have failed to demonstrate that they have standing to assert the rights of others. The Court will not address these issues absent standing.

Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes.

The general rule gives way, however, when a statute classifies by race, alienage or national origin. These factors are so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy—a view that those in the burdened class are not as worthy or deserving as others. For these reasons and because such discrimination is unlikely to be soon rectified by legislative means, these laws are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest. *McLaughlin v Florida*, 379 US 184, 192, 13 LEd2d 222, 85 SCt 283 [288] (1964); *Graham v. Richardson*, 403 US 365, 29 LEd2d 534, 91 SCt 1848 (1971). Similar oversight by the courts is due when state laws impinge on personal rights protected by the Constitution. *Kramer v Union Free School District No. 15*, 395 US 621, 23 LEd2d 583, 89 SCt 1886 (1969); *Shapiro v. Thompson*, 394 US 618, 22 LEd2d 600, 89 SCt 1322 (1969); *Skinner v. Oklahoma ex rel. Williamson*, 316 US 535, 86 LEd 1655, 62 SCt 1110 (1942).

Legislative classifications based on gender also call for a heightened standard of review. That factor generally provides no sensible ground for different treatment. "[W]hat differentiates sex from such nonsuspect statuses as intelligence or physical disability ... is that the sex characteristic frequently bears no relation to ability to perform or contribute to society." *Frontiero v. Richardson*, 411 US 677, 686, 36 LEd2d 583, 93 SCt 1764 [1770] (1973) (plurality opinion). Rather than resting on meaningful considerations, statutes distributing benefits and burdens between the sexes in different ways very likely reflect outmoded notions of the relative capabilities of men and women. A gender classification fails unless it is substantially related to a sufficiently important governmental interest. *Mississippi University for Women v. Hogan*, 458 US 718, 73 LEd2d 1090, 102 SCt 3331 (1982); *Craig v. Boren*, 429 US 190, 50 LEd2d 397, 97 S.Ct 451 (1976). Because illegitimacy is beyond the individual's control and bears "no relation to the individual's ability to participate in and contribute to society," *Mathews v. Lucas*, 427 US 495, 505, 49 LEd2d 651, 96 SCt 2755 [2762] (1976), official discriminations resting on that characteristic are also subject to somewhat heightened review. Those restrictions "will survive equal protection scrutiny to the extent they are substantially related to a legitimate state interest." *Mills v. Habluetzel*, 456 US 91, 99, 71 LEd2d 770, 102 SCt 1549 [1554] (1982).

We have declined, however, to extend heightened review to differential treatment based on age:

"While the treatment of the aged in this Nation has not been wholly free of discrimination, such persons, unlike, say, those who have been discriminated against on the basis of race or national origin, have not experienced a 'history of purposeful unequal treatment' or been subjected to unique disabilities on the basis of sterotyped characteristics not truly indicative of their abilities." *Massachusetts Board of Retirement v. Murgia*, 427 US 307, 313, 49 LEd2d 520, 96 SCt 2562 [2567] (1976).

The lesson of *Murgia* is that where individuals in the group affected by a law have distinguishing characteristics relevant to interests the state has the authority to implement, the courts have been very reluctant, as they should be in our federal system and with our respect for the separation of powers, to closely scrutinize legislative choices as to whether, how and to what extent those interests should be pursued. In such cases, the Equal Protection Clause requires only a rational means to serve a legitimate end.

Following the *Cleburne* analysis, this Court begins with the presumption that

Oklahoma's prohibition on alcoholic beverage advertising is valid and the Court will sustain the prohibition if the classification drawn by Oklahoma's constitution and statute, as applied, is rationally related to a legitimate state interest.

Plaintiffs contend that the presumption of validity must give way and the Court must apply a heightened standard of review because Oklahoma's ban on alcoholic beverage advertising allegedly impinges plaintiffs' First Amendment right of commercial free speech. This argument for a heightened standard of review was rejected by the Fifth Circuit in *Dunagin*, 718 F.2d at 752-753:

> The plaintiffs ask us to apply the strict scrutiny standard of review, relying on the fundamental rights strand of strict scrutiny equal protection doctrine. The Supreme Court has limited the fundamental rights subject to strict scrutiny to those rights which are explicitly or implicitly guaranteed by the Constitution. *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 34, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973). Freedom of speech is of course a fundamental right that would ordinarily trigger strict scrutiny. *Police Department of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). The plaintiffs reason that, since the First Amendment has been extended to commercial speech which concerns lawful activity and is not misleading, strict scrutiny is appropriate.
>
> Strict scrutiny is clearly inappropriate. In this case we have held the Mississippi law entirely legal under the First Amendment, and parties cannot insist on strict scrutiny merely by asserting a First Amendment right that the court ultimately finds not to be violated. Furthermore, in all cases commercial speech is entitled to only a limited measure of protection under a different standard of review. Under the *Central Hudson Gas* test, the state must demonstrate a substantial interest which is directly advanced by the regulation. If the right to advertise for profits were fundamental, then parties to any particular commercial speech regulation could rely on a stricter standard of review—requiring a compelling state interest and necessary means chosen to attain it—by locating an unregulated class of advertisers and insisting on an equal protection analysis by the court.
>
> It is important to recognize that, for identification with the commercial speech doctrine and the interests it protects, there is no classification here on which an equal protection analysis can be based. Commercial speech has been termed "unique because the speech does not advance any value implicating the interests of the speaker in the speech." Note, *Constitutional Protection of Commercial Speech*, 82 Colum.L.Rev. 720, 750 (1982). The primary interests protected are those of the listener—the consumer—in receiving information. In *Virginia Board of Pharmacy* [425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976)], the Court made clear that the First Amendment protects the right to receive information 425 U.S. at 756–57, 96 S.Ct. at 1822–23, and noted that "[a]s to the particular consumer's interest in the free flow of commercial information, that interest may be as keen, if not keener by far, than his interest in the day's most urgent political debate," *id.* at 763, 96 S.Ct. at 1826. We do not mean to suggest that media advertisers lack standing to challenge commercial speech regulations. *See Metromedia*, 453 U.S. [490] at 504 n. 11, 101 S.Ct. [2882] at 2890 n. 11 [69 L.Ed.2d 800 (1981)] (Justice White, for plurality), 544, 101 S.Ct. at 2911 (Justice Stevens, dissenting in part). Nevertheless, "[t]he First Amendment's concern for commercial speech is based on the informational function of advertising ... [and] there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity." *Central Hudson Gas*, 447 U.S. at 563, 100 S.Ct. at 2350.

Hence, unlike other areas of First Amendment protection, the commercial speech doctrine is concerned primarily with the level and quality of information reaching the listener. From this vantage point, there is no classification upon which the plaintiffs can assert a meaningful equal protection claim. From the standpoint of the consumer, all residents in Mississippi have access to liquor advertising from interstate and intrastate sources, and indeed receive a great deal of out-of-state advertising according to the plaintiff. There is no discrimination against particular classes of consumers in the state.

While the economic interests of the intrastate advertisers are at a disadvantage compared with those of the interstate media, this fact raises no First Amendment concerns for the reasons explained above, and gives rise to an equal protection issue requiring only minimal scrutiny. Under such deferential scrutiny of economic regulation, the classification challenged need only be rationally related to a legitimate state interest, *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976), and is invalid only if "wholly irrelevant to the achievement of the State's objective," *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1104, 6 L.Ed.2d 393 (1961).

Two circuit courts, as well as this Court, have found that the State's interest under its police power to protect the health and welfare of its citizens against the problems associated with alcohol abuse, combined with the State's powers under the Twenty-First Amendment of the United States Constitution to regulate alcoholic beverages, outweigh plaintiffs' right of commercial free speech, which is granted only limited protection under the First Amendment. *Oklahoma Telecasters,* 699 F.2d 490; *Dunagin,* 718 F.2d 738; Order of October 1, 1985. Plaintiffs cannot enhance their equal protection claim by asserting a First Amendment right that the Court finds has not been violated. Accordingly, the Court applies the rational basis standard of review.

Under the rational basis standard of review, Oklahoma's laws prohibiting alcoholic beverage advertising will be sustained if the classification drawn by Oklahoma's constitution and statute is rationally related to a legitimate state interest. However the rational-basis standard is "not a toothless one." *Schweiker v. Wilson,* 450 U.S. 221, 234, 101 S.Ct. 1074, 1082, 67 L.Ed.2d 186 (1984), quoting *Mathews v. Lucas,* 427 U.S. 495, 510, 96 S.Ct. 2755, 2764, 49 L.Ed.2d 651 (1976). Here, Oklahoma's laws impose a blanket prohibition on alcoholic beverage advertising, while at the same time the sale and consumption of alcoholic beverages is legal in the State. Further, despite Oklahoma's laws prohibiting alcoholic beverage advertising, the Court finds, based upon the stipulations entered into by the State, that Oklahoma is inundated with alcoholic beverage advertising. Oklahoma allows television stations in surrounding states to broadcast into Oklahoma programs containing alcoholic beverage advertisements. Oklahoma allows radio stations in other states to broadcast into Oklahoma programs containing alcoholic beverage advertisements. Oklahoma allows print advertising of alcoholic beverages originating outside Oklahoma (e.g. nationally or regionally distributed magazines and out-of-state newspapers) to be distributed in Oklahoma. Oklahoma allows alcoholic beverage advertising on cable television. Oklahoma allows direct satellite reception of alcoholic beverage advertising. Even within its own borders, Oklahoma allows print advertising of alcoholic beverages to be printed and published within Oklahoma if significant publishing and editorial processes or decisionmaking occur outside the State and if the publication is for national distribution. Indeed, the *Wall Street Journal* is constructing a regional publishing plant in Oklahoma with the blessing of both the Attorney General of the State of Oklahoma and the state courts, despite the fact that the newspaper will contain alcoholic beverage advertising. *Op. Att'y Gen. of Okla.,* 85–114 (Sept. 16,

1985); *Dow Jones & Company, Inc. v. Willis, et al.*, No. CJ–85–8773 (Dist.Ct. of Okla. County, Okla., Dec. 13, 1985). Finally, Oklahoma allows beer advertising in every medium by everyone. In the midst of this flood of alcoholic beverage advertising, the only instance where Oklahoma seeks to enforce its prohibition on alcoholic beverage advertising is against in-state advertisers, and even there exceptions abound for the *Wall Street Journal,* the yellow and white pages of telephone directories, all packaging advertising, and every form of beer advertising imaginable. The Supreme Court has held that a state may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational. *Cleburne,* —— U.S. at ——, 105 S.Ct. at 3257, 87 L.Ed.2d at 324.

 The asserted state interest of the State of Oklahoma in enforcing its alcoholic beverage advertising prohibition is to prevent the artificial stimulation of demand resulting in increased overall consumption of alcoholic beverages and alcohol-related abuses. However, there is no credible evidence in the record before this court that the State's ban on alcoholic beverage advertising, as applied, serves even remotely to accomplish the asserted goal. Based upon Oklahoma's stipulations, Oklahoma's prohibition on alcoholic beverage advertising has little or no effect on demand for alcoholic beverages, has little or no effect on overall consumption of alcoholic beverages, and has little or no effect on reducing alcohol abuse.

Utilizing even the lowest possible standard of review, the Court finds that Oklahoma applies its prohibition on alcoholic beverage advertising in an arbitrary, capricious, and irrational manner. Accordingly, the Court DECLARES that Oklahoma's prohibition on alcoholic beverage advertising [Okla. Const. art. XXVIII, § 5 and Okla.Stat. tit. 37, § 516 (1981)], as applied,

violates plaintiff's right of equal protection of the laws, guaranteed by the Fourteenth Amendment of the United States Constitution.[5] Oklahoma is PERMANENTLY ENJOINED from enforcing the provisions of Okla. Const. art. XXVIII, § 5 and Okla. Stat. tit. 37, § 516 (1981) against these plaintiffs. Oklahoma remains free to prevent the dissemination of any alcoholic beverage advertising, even by these plaintiffs, that is false, deceptive, or misleading, or that proposes an illegal transaction. *See* Order of October 1, 1985, at p. 4.

---

5. In its meager (even ambivalent) efforts to avoid the decision reached today by the Court, the State of Oklahoma does cite *Oklahoma Telecasters* and *Dunagin.* Those decisions are clearly distinguishable here. *Oklahoma Telecaster's* did not address the equal protection issue. The stipulation of facts, agreed to by the State in this case, make it entirely distinguishable from the facts in *Dunagin.*