**ADOLPH COORS COMPANY,**
Plaintiff–Appellee,

v.

Nicholas **BRADY,** in his official capacity as Secretary of the United States Department of the Treasury; Steve Higgins, in his official capacity as Director, Bureau of Alcohol, Tobacco and Firearms, Defendants–Appellants,

and

Speaker and Bipartisan Leadership Group of the United States House of Representatives, Intervenor–Defendant–Appellant,

Center for Science in the Public Interest; G. Heileman Brewing Company, Amicus Curiae.

Nos. 89–1203, 89–1239.

United States Court of Appeals, Tenth Circuit.

Sept. 23, 1991.

John S. Koppel, Atty., Dept. of Justice, Washington, D.C. (Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Michael J. Norton, U.S. Atty., Denver, Colo., John F. Cordes and Michael J. Singer, Attys., Dept. of Justice, Washington, D.C., with him on the briefs), for defendants-appellants.

Steven R. Ross, General Counsel to the Clerk (Charles Tiefer, Deputy General Counsel to the Clerk, Michael L. Murray, Sr. Asst. Counsel to the Clerk, Robert Michael Long, Asst. Counsel to the Clerk, Janina Jaruzelski, Asst. Counsel to the Clerk), U.S. House of Representatives, Washington, D.C., for intervenor-defendant-appellant.

K. Preston Oade, Jr. (Thomas J. Carney and Linda Gavit, with him on the brief), of Broadley, Campbell, Carney & Madsen, Golden, Colo., for plaintiff-appellee.

Bruce Silverglade of Center for Science in the Public Interest, Washington, D.C., filed a brief as amicus curiae.

Reid L. Ashinoff of Ashinoff, Ross & Korff, New York City, Randy J. Smith of G. Heilemen Brewing Co., Inc., and Joseph E. Meyer, III, and Erin K. Toll of Pendleton & Sabian, P.C., Denver, Colo., filed a brief for amicus curiae G. Heilmen Brewing Co., Inc.

Before McKAY, McWILLIAMS and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Nicholas Brady, Secretary of the Treasury, *et al.* (the Treasury), and intervenors Speaker and Bipartisan Leadership Group of the United States House of Representatives (the House), appeal the district court's grant of summary judgment in favor of Adolph Coors Co. (Coors). The district court ruled that 27 U.S.C. §§ 205(e) and 205(f) (1988), which prohibit the disclosure of alcohol content information in advertising or labeling malt liquor, constitute an illegal restraint on free speech in violation of the First Amendment, and enjoined the government's enforcement of the statute's restrictions. We reverse and remand.

I.

In 1987, Coors submitted an application to the Bureau of Alcohol, Tobacco and Firearms (BATF) requesting approval for labels and advertisements for its Coors and Coors Light beer that would disclose the alcohol content of these products. The BATF denied Coors' application stating that sections 205(e)(2) and 205(f)(2) prohibit labels or advertisements disclosing the alcohol content of malt beverages unless such disclosure is required by state law.[1]

---

1. 27 U.S.C. §§ 205(e)(2) and 205(f)(2) (1988) provide in relevant part:

 "**§ 205. Unfair competition and unlawful practices**
 "It shall be unlawful for any person engaged in business as a distiller, brewer, rectifier, blender, or other producer, or as an importer or wholesaler, of distilled spirits, wine, or malt beverages, or as a bottler, or warehouseman and bottler, of distilled spirits, directly or indirectly or through an affiliate:
 " . . . .
 "**(e) Labeling**
 "To sell or ship or deliver for sale or shipment, or otherwise introduce in interstate or foreign commerce, or to receive therein, or to remove from customs custody for consumption, any distilled spirits, wine, or malt beverages in bottles, unless such products are bottled, packaged, and labeled in conformity with such regulations, to be prescribed by the Secretary of the Treasury, with respect to packaging, marking, branding, and labeling and size and fill of container ... (2) as will provide the consumer with adequate information as to the identity and quality of the products, the alcoholic content thereof (except that statements of, or statements likely to be considered as statements of, alcoholic content of malt beverages are prohibited unless required by State law and except that, in case of wines, statements of alcoholic content shall be required only for wines containing more than 14 per centum of alcohol by volume)....
 " . . . .

On July 2, 1987, Coors filed a complaint against the Secretary of the Treasury, and the Director of the BATF, alleging that sections 205(e) and 205(f) violate Coors' rights under the Free Speech Clause of the First Amendment because they prohibit Coors from disclosing truthful information as to the alcohol content of its malt beverages. Coors asked the district court to set aside the BATF's denial of Coors' labeling and advertisement application, and to declare the statutory sections invalid.

The Treasury admitted in its answer that sections 205(e)(2) and 205(f)(2) are unconstitutional under the First Amendment. The Justice Department, acting on behalf of the Treasury and BATF, also asserted that the Executive Branch believed restricting the labeling and advertising of the alcoholic content of malt beverages to be unconstitutional. The House, however, moved to intervene in order to defend the constitutionality of the statute.

The House and Coors filed cross-motions for summary judgment. Following a hearing, the district court issued an order holding that sections 205(e)(2) and 205(f)(2) constitute an illegal restraint on speech under the First Amendment, and enjoining the BATF from enforcing those provisions. The Treasury, which now defends the constitutionality of the statutory sections, and the House seek a reversal of the district court's order. The relevant facts and legal arguments presented to the district court and the legal conclusions drawn therefrom are summarized below.

## II.

To review a summary judgment order, we apply the same standard used by the trial court under Fed.R.Civ.P. 56. *Osgood v. State Farm Mut. Auto Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). Rule 56 directs that summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. This court determines whether, under the correct interpretation of the substantive law, there exist material factual disputes which preclude summary judgment. *See id.; see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). In determining whether a material issue of fact exists, we review the record in the light most favorable to the party opposing summary judgment. *McKenzie v. Mercy Hosp.*, 854 F.2d 365, 367 (10th Cir.1988). The district court's conclusions of law are reviewed *de novo*. *Id.*

Commercial speech is that which does " 'no more than propose a commercial transaction.' " *Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762, 96 S.Ct. 1817, 1825–26, 48 L.Ed.2d 346 (1976) (quoting *Pittsburgh Press Co. v. Human Relations Comm'n*, 413 U.S. 376, 385, 93 S.Ct. 2553, 2558–59, 37 L.Ed.2d 669 (1973)). Advertising has been recognized as commercial speech. *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 637, 105 S.Ct. 2265, 2274, 85 L.Ed.2d 652 (1985). Product labels, which are part of a firm's marketing plan to provide certain information to the consumer, also constitute commercial speech. *See id.; Central Hudson Gas v. Public Serv. Comm'n*, 447 U.S. 557, 563, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980) (noting that "[t]he First Amendment's concern for commercial speech is based on the informational function of advertising").

Regulations limiting commercial speech that are challenged on First Amendment grounds are subject to a four-part

---

**"(f) Advertising**

"To publish or disseminate or cause to be published or disseminated by radio broadcast, or in any newspaper, periodical or other publication or by any sign or outdoor advertisement or any other printed or graphic matter, any advertisement of distilled spirits, wine, or malt beverages, if such advertisement is in, or is calculated to induce sales in, interstate or foreign commerce, or is disseminated by mail, unless such advertisement is in conformity with such regulations, to be prescribed by the Secretary of the Treasury ... (2) as will provide the consumer with adequate information as to the identity and quality of the products advertised, the alcoholic content thereof (except the statements of, or statements likely to be considered as statements of, alcoholic content of malt beverages and wines are prohibited).... "

analysis described by the Supreme Court as follows:

> "At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest."

*Central Hudson,* 447 U.S. at 566, 100 S.Ct. at 2351.

### A.

In order for commercial speech to come within the protection of the First Amendment under the first prong of the *Central Hudson* test, it must concern a lawful activity and not be misleading. *Id.* The labeling and advertising of malt beverages relate to an activity lawful under federal law. *U.S. Const.* amend. XXI, § 1 (repeal of Prohibition); *see also Dunagin v. City of Oxford,* 718 F.2d 738 (5th Cir. 1983) (although alcohol sales and consumption may be illegal in some state counties, such activity is nonetheless considered lawful for First Amendment purposes). Moreover, as the district court correctly noted, consumers have a substantial interest in knowing the alcohol content of beer. For example, many state statutes prohibit certain activities (such as driving) at or past a specific level of intoxication. Rec., vol. II, at 53. Consequently, restrictions on alcohol content disclosure are within the ambit of First Amendment protection.[2]

**2.** The House argued below that alcohol content disclosure is inherently misleading. The district court rejected this contention. On appeal, the Justice Department, on behalf of defendants, has taken the position that "accurate and specific statements of alcohol content by Coors of its malt beverages" would not be misleading. Opening Brief of Defendants–Appellants at 15. The House has apparently abandoned its position that disclosure of malt beverage alcohol content *alone* is misleading and does not urge

### B.

Under the second prong of the *Central Hudson* test, we must assess the strength of the government's interest in regulating the disclosure of alcohol content. The legislative history introduced in evidence below reveals the Congressional interests underlying sections 205(e) and 205(f). The Federal Alcohol Administration Act (FAAA), which became law in 1935 shortly after the repeal of Prohibition, was designed as a comprehensive statute to deal with practices[3] within the alcohol beverage industry that Congress had judged to be unfair and deceptive, resulting in harm to both competitors and consumers. When reporting favorably to Congress on the FAAA, the House Ways and Means Committee summarized its conclusions with respect to alcohol content disclosure as follows:

> "The variation of alcoholic content has little consumer importance and the industry recognizes that attempts to sell beer and other malt beverages on the basis of alcoholic content are attempts to take advantage of the ignorance of the consumer and the psychology created by prohibition experiences.
>
> "Legitimate members of the industry have suffered seriously from unfair competition resulting from labeling and advertising that uses such terms as 'strong', 'extra strength', 'high test', 'high proof', 'pre-war strength', '14 percent original extract', and from brand names or other statements or references which include conspicuous numerals or symbols intending to suggest that the numerals or symbols represent the alcoholic content. Usually such representations of excess alcoholic content are false, but irrespective of their falsity, their abuse has grown to such an extent

the position as a basis for reversal. *See* Opening Brief of Intervenor–Defendant–Appellant at 26–27 n. 16.

**3.** In addition to the prohibitions at issue in this case, Congress enacted regulations restricting the use of exclusive outlets, 27 U.S.C. § 205(a), tied houses, § 205(b), and commercial bribery, § 205(c).

since repeal that the prohibition of all such statements is in the interest of the consumer and the promotion of fair competition."

*Federal Alcohol Administration Act: Hearings Before the Ways and Means Committee, HR8539,* 74th Cong., 1st Sess. (1935). The legislation thus stemmed from the belief that withholding alcohol content information would benefit the consumer and promote fair competition within the industry.

Testimony given during Federal Alcohol Control Administration (FACA) hearings[4] confirms that one of the concerns underlying the movement to prohibit the disclosure of the alcohol content of malt beverages was that such disclosures tended to be misleading and were therefore subject to misuse. Testimony showed that accurate readings of alcohol content were difficult to obtain due to the "very peculiar" conditions of the brewing industry, namely that the malt crops and the atmospheric pressures and temperatures of fermenting cellars varied. Rec., vol. I, doc. 15, at 36–37. Given these problems, the alcohol content of beer could not be accurately measured and disclosed without allowing for a .4–.5 percent error of margin. *Id.* at 38–39. Testimony also suggested that not disclosing the alcohol content of malt beverages would relieve marketplace pressures to produce beer on the basis of alcohol content, resulting over the long term in beers with a lower alcohol content. *Id.* at 33.

The legislative history reveals congressional concern regarding the effect of "strength wars" on brewers and the consuming public. In the FACA hearings, witnesses testified that statements of alcohol content on malt beverages should be prohibited to avoid this evil. Ralph W. Jackman of the Wisconsin State Brewers Association testified that labels displaying alco-

hol content resulted in a strength war wherein producers competed for market share by putting increasing amounts of alcohol in their beer. *See id.* at 34–38. Jackman testified that "the legitimate brewer does not desire to sell his beer on the basis of alcohol." *Id.* at 34. He said that brewers were unable to market beer on the basis of taste and flavor, however, because the practice of disclosing the alcohol content of malt beverages generally exerted market pressure on brewers to increase the alcohol content of their own products. *See id.* at 40. Alexander H. Bell, another representative of the brewing industry, echoed Mr. Jackman's testimony:

"I have steadfastly urged that beer be sold as a beverage, with limited alcohol content, not as an intoxicant. That was followed for some little time by one of the local brewers here, till they found that in order to meet the competition it was necessary to increase the alcohol content of the beer to some extent."

*Id.* at 68. Jackman further testified that competitors in the marketplace would benefit because producing beer with a greater amount of alcohol was more costly. *See id.* at 35. Finally, industry witnesses testified that beer with a lower alcohol content would appease the "drys," who opposed drinking, and thus nondisclosure of alcohol content would benefit the industry as a whole.

■ The asserted government interest central to this case is the prevention of strength wars among the brewers. Congress believed that, in the long run, the market as regulated by section 205(e) and (f) would produce a lower alcohol beer for the benefit of the industry and the consuming public. The interests outlined above, as asserted, are substantial. It is a reasonable, legitimate legislative interest within

---

**4.** FACA hearings were held just prior to the drafting and adoption of the FAAA on November 1, 1934. Federal Alcohol Regulations were a precursor to the FAAA. The FAAA Senate Report states:

"The bill embodies in statutory form so much of the former code system as the committee now deems appropriate and within the constitutional power of Congress to enact."

S.Rep. No. 1215, 7th Cong., 17 Sess. 2 (1935). Because the drafters of the FAAA intended to adopt many FACA regulations, these hearings are relevant to congressional intent with respect to the FAAA. The hearings were introduced into evidence in the district court by Coors. *See* rec., vol. I, doc. 17, at 9 n. 5 (Plaintiff's Response to Motion for Summary Judgment), and rec., vol. I, docs. 15 and 16.

Congress' commerce power to regulate the marketing of beer in interstate commerce to ensure fair competition, and to maintain moderate levels of alcohol in beer in order to protect the consumer from the otherwise unchecked "mistakes and excesses" of the brewing industry. *See* Opening Brief for the Defendants–Appellants at 4.[5]

In assessing the strength of the government's interests in withholding the alcohol content of the beers, the district court focused primarily on the validity of the asserted ends given the passage of time and changed circumstances. The court concluded that the factual circumstances that had given rise to the statute in 1935 no longer exist, and consequently, the statute no longer serves a substantial interest. The court first noted that because there are fewer brewers producing a larger percentage of the market share, "it's very difficult for the court to see how there is any unfair competition or antitrust aspect to this." Rec., vol. II, at 52.

■ It is irrelevant that the circumstances giving rise to a particular piece of legislation have changed so long as the legislation continues to serve some valid and substantial government interest. *See Bolger v. Young Drug Prods.*, 463 U.S. 60, 71, 103 S.Ct. 2875, 2883, 77 L.Ed.2d 469 (1983); *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460, 98 S.Ct. 1912, 1920–21, 56 L.Ed.2d 444 (1978). The fact that the malt beverage industry and market have changed does not compel the conclusion that strength wars are no longer a real danger to the consuming public as well as to the brewers. The government argues that, in spite of changed circumstances, there is a continuing danger of strength wars similar to those that existed in 1935, as evidenced by Coors' advertising campaign, current market conditions, and con-

sumer demand. *See* Opening Brief of Defendants–Appellants at 17–18. Coors' admission at oral argument that it desires to publish the alcohol content of its products to dispel Coors' image of being a "weak" beer testifies to the viability of the government's interest. *See* Testimony of Oral Argument, Nov. 6, 1990 (on file with Clerk of Court for Tenth Circuit). The House argues that the statute has continuing validity given that the emerging trend in the beer industry toward many small breweries may precipitate the strength war problems associated with the marketplace of 1935. Opening Brief of Intervenors–Defendants at 24 n. 15. Similarly, the government still asserts its interest in protecting the public against the "excesses" of the brewing industry. Opening Brief for Defendants–Appellants at 4, 22. Given all of these circumstances, it is apparent that the government has *asserted* a legitimate and substantial interest supporting the continuing validity of the legislation at issue.

### C.

■ We next assess whether the regulation at issue "directly advances" the government's asserted interest. *See Central Hudson*, 447 U.S. at 566, 100 S.Ct. at 2351. Whether legislation "directly advances" the government's end requires us to focus on the relationship between the government's interest and the prohibition on speech. *Id.* at 569, 100 S.Ct. at 2353. There must be an "immediate connection" between the prohibition and the government's asserted end. *Id.* If the means-end connection is "tenuous" or "highly speculative", the regulation cannot survive constitutional scrutiny. *Id.*

We begin our analysis by noting that the record here does not unambiguously reflect

---

5. Contrary to Coors' contentions, the fact that Congress pursued non-commercial as well as commercial aims in enacting §§ 205(e) and 205(f) does not detract from either the legitimacy or substantiality of Congress' aims. *See infra* at 27. The noncommercial protective aims of this legislation are consistent with the Commerce Clause.

 "One permissible and particularly potent form of federal commerce regulation is the imposi-

tion of *protective conditions* on the privilege of engaging in activity that affects interstate commerce.... [T]he Supreme Court has consistently upheld congressional use of protective conditions to combat activities largely disfavored for largely noncommercial reasons."
Laurence Tribe, *Constitutional Law* § 5–6 at 311–12 (2d ed. 1988).

a correct legislative judgment that the enacted means directly advance the intended ends. Unlike a number of cases in the commercial speech area, the link between advertising and strength wars is not self-evident. *See, e.g., Posadas de Puerto Rico Assocs. v. Tourism Co.,* 478 U.S. 328, 341–42, 106 S.Ct. 2968, 2976–77, 92 L.Ed.2d 266 (1986) (link between ban on gambling advertising and level of gambling self-evident); *Central Hudson,* 447 U.S. at 566, 100 S.Ct. at 2353 (link between advertising ban and sales self-evident); *Dunagin v. City of Oxford,* 718 F.2d 738, 747–49 & n. 8 (5th Cir.1983) (link between advertising and increased alcohol use deemed self-evident; separate analysis of means-end connection therefore not conducted), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984). In addition, this is not a case where we can defer to the legislature on the basis of precedent which already has established that the legislature's chosen means directly advances the asserted ends. *See, e.g., Metromedia v. City of San Diego,* 453 U.S. 490, 509 n. 14, 101 S.Ct. 2882, 2893 n. 14, 69 L.Ed.2d 800 (1981) (plurality relied on established line of cases to ratify legislature's judgment that banning commercial billboards would improve traffic safety). On the other hand, we cannot agree with the district court that, as a matter of law, the government's asserted end is *not* directly advanced by the promotion on advertising the alcohol content of beer.

■ The party urging the prohibition on speech has the burden of justifying such a restriction. *See Board of Trustees v. Fox,* 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989) (*Fox III*). In *Fox v. Board of Trustees,* 841 F.2d 1207, 1213 (2d Cir.1988) (*Fox II*), the Second Circuit considered whether a prohibition placed on corporations conducting product demonstrations in campus dormitories directly advanced the University's interest in prevention of crime, protection against consumer exploitation, preservation of residential tranquillity, and the promotion of education. The court of appeals concluded that the district court erred in assessing whether the legislation directly advanced the asserted governmental interests because it had only considered whether the legislative means were reasonably related to the legislative ends. *Id.* The appellate court rejected the district court's deferential review, stating:

"The burden ... shifts to the state not merely to assert that it has a substantial interest *but to demonstrate that interest by real evidence....*

"It is less clear, however, that the Regulation directly advances the State's interests; the Regulation cannot be sustained if it only provides 'ineffective or remote support for the government's purpose.' *Central Hudson,* 447 U.S. at 564, 100 S.Ct. at 2350.... *Whether SUNY offered sufficient evidence to meet its burden* is not evident as the district court considered only whether the Regulation was reasonably related to the asserted governmental interests, not whether it directly advanced them."

*Id.* (emphasis added).

In reviewing the Second Circuit's decision in *Fox II,* the Supreme Court held:

"The Court of Appeals did not decide, however, whether Resolution 66–156 directly advances these interests, and whether the regulation it imposes is more extensive than is necessary for that purpose.... *We think that remand was correct, since further factual findings had to be made."*

*Fox III,* 492 U.S. at 475–76, 109 S.Ct. at 3032–33 (emphasis added). The Supreme Court reversed the Second Circuit's decision with respect to the terms of the appellate court's remand order detailing how the "more extensive than necessary prong" of the analysis should be applied, but the Court did not further comment on the terms of the remand with respect to the "directly advance" prong. This tacit approval of the Second Circuit's approach to whether the legislative means "directly advance" the legislative ends comports with the Supreme Court's statement in *Fox III* that "the State bears the burden of justifying its restrictions." *Id.* at 480, 109 S.Ct. at 3034–35; *see also Linmark Assocs. v. Township of Willingboro,* 431 U.S. 85, 95–96, 97 S.Ct. 1614, 1619–20, 52 L.Ed.2d 155

(1977) (record evidence required to establish nexus between legislative ends and means); *cf. Dunagin,* 718 F.2d at 748 n. 8 (noting that particularized findings of fact should play a limited role in determining the constitutionality of any given statute).

Requiring the government to affirmatively demonstrate a nexus between its legislative means and ends may appear an undue judicial intrusion on the legislative function. *Fox III,* 492 U.S. at 478–81, 109 S.Ct. at 3033–35 (deference should be accorded governmental decision-makers). Nonetheless, the "directly advance" prong of the *Central Hudson* analysis compels a reviewing court to assess whether the legislative ends are served by the legislative means: a determination that the legislature presumably made in enacting the legislation at issue. Therefore, we cannot simply assume that particular means will accomplish certain ends because the legislature presumed they would and enacted them into law.

In this case, Congress chose to regulate alcohol content disclosure in order to remove the pressure to produce malt beverages with ever-increasing alcohol content. Coors introduced, and the district court considered, evidence that the legislation as enacted now provides only "ineffective or remote support for the government's purpose." *Central Hudson,* 447 U.S. at 564, 100 S.Ct. at 2350; *see, e.g.,* rec., vol. II, at 22–24 and 29. In assessing whether the prohibition at issue directly advanced the government's ends, the district court did not have the benefit of *Fox III.* The court first looked at the issue in conjunction with whether Congress was pursuing a substantial end. *See* rec., vol. II, at 51–52. It then indicated it would merge its consideration of "directly advance" with its "less restrictive means" analysis:

> "Whether the governmental interest is directly advanced by the statute is an interesting question, because we still have the ability of the Bureau, BATF, to regulate, if this statute is declared unconstitutional, in violation of the First Amendment. We still have the opportunity for regulation to make sure that there is no misleading type of information given."

*Id.* at 53–54. As a consequence, the district court did not separately consider whether the facts presented by both sides presented a genuine issue of material fact on whether the legislative means *directly advanced* the legislative ends. The record before us demonstrates that there is a question of material fact. Summary judgment in favor of Coors was thus inappropriate.

### D.

If the district court determines on remand that Congress' substantial interest in controlling strength wars among breweries is directly advanced by the regulation of alcohol-content advertising, it must then assess whether the absolute prohibition of such advertising is more extensive than necessary to serve the government's interest. Subsequent to the district court's decision in this case, the Supreme Court formulated a standard for the "no more extensive than necessary" element of the *Central Hudson* analysis:

> "*What our decisions require is a ' "fit" between the legislature's ends and the means chosen* to accomplish those ends,'—a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is 'in proportion to the interest served,' that employs *not necessarily the least restrictive means but,* as we have put it in the other contexts discussed above, *a means narrowly tailored to achieve the desired objective.....*
>
> "We reject the contention that the test we have described is overly permissive. It is far different, of course, from the 'rational basis' test used for Fourteenth Amendment equal protection analysis. There it suffices if the law could be thought to further a legitimate governmental goal, without reference to whether it does so at inordinate cost. Here *we require the government goal to be substantial, and the cost to be carefully calculated.*"

*Fox III*, 492 U.S. at 480, 109 S.Ct. at 3034–35 (citations omitted) (emphasis added). The Court placed the burden firmly on the government to demonstrate that restrictions were in proportion to the interest served: "Moreover, since the State bears the burden of justifying its restrictions, it must affirmatively establish the reasonable fit we require." *Id.* (citation omitted).

 The district court here concluded that the absolute prohibition of alcohol content advertising does not satisfy the fourth prong of the *Central Hudson* test because "there [could] be a much less extensive regulation carefully drawn to achieve the objectives that are argued for by the defendant intervenor in this case other than the flat prohibition." Rec., vol. II, at 54. Rendering its decision without the benefit of the precedent established by *Fox III*, the district court misperceived the nature of the "no more extensive than necessary" analysis. For a regulation of speech to pass constitutional muster, it need not be demonstrated that the government chose the least restrictive means; rather, the governmental goal must be "substantial" and the cost "carefully calculated." *Fox III*, 492 U.S. at 480, 109 S.Ct. at 3034–35. The Court in *Fox III* emphasized the limits of judicial review in this respect and the necessity of deferring to the legislature's judgment as to what "reasonable" means best effectuate the governmental end: "[W]e leave it to governmental decisionmakers to judge what manner of regulation may best be employed." *Id.* In addition, the Court stated that it chose not to adopt a least-restrictive-means requirement in order to "provide the Legislative and Executive Branches needed leeway in a field (commercial speech) 'traditionally subject to governmental regulation.'" *Id.* at 481, 109 S.Ct. at 3035 (quoting *Ohralik*, 436 U.S. at 455–56, 98 S.Ct. at 1918–19).

As discussed above, the government has asserted a substantial interest in preventing strength wars for the benefit of both consumers and producers. The possibility of less extensive means of regulation does not require the conclusion that the chosen means are impermissible. The legislative history here demonstrates that the legislature reasonably could have concluded that strength wars and their attendant dangers could be eliminated by prohibiting alcohol content disclosure. *See Fox III*, 492 U.S. at 480, 109 S.Ct. at 3034–35; *San Francisco Arts & Athletics Inc. v. United States Olympic Comm.*, 483 U.S. 522, 539, 107 S.Ct. 2971, 2982, 97 L.Ed.2d 427 (1987); *Posadas de Puerto Rico Assocs.*, 478 U.S. at 344, 106 S.Ct. at 2978; *cf. Capital Broadcasting Co. v. Mitchell*, 333 F.Supp. 582, 585 (D.C.Cir.1971) (three-judge court) ("Congress had convincing evidence that the Labeling Act of 1965 had not materially reduced the incidence of smoking"), *aff'd sub nom. Capital Broadcasting Co. v. Acting Attorney General*, 405 U.S. 1000, 92 S.Ct. 1289, 31 L.Ed.2d 472 (1972); *Dunagin*, 718 F.2d at 751 ("We do not believe that a less restrictive time, place and manner restriction, such as a disclaimer warning of the dangers of alcohol, would be effective. The state's concern is not that the public is unaware of the dangers of alcohol.... The concern instead is that advertising will unduly promote alcohol consumption despite known dangers").

The district court apparently concluded that the legislation currently fails the more-restrictive-than-necessary analysis because it represents an incorrect balance between the consumers' interest in having complete disclosure and the government's interest in preventing strength wars. *See* rec., vol. II, at 52–53. The court reasoned that because the government has a relatively insubstantial interest in preventing strength wars when compared to the consumers' countervailing interest in disclosure, the statute is unconstitutional. *Id.* Relevant case law suggests that a court may evaluate the competing interests in this manner to conclude that, as a constitutional matter, the ends cannot justify the scope of the regulation at issue. Thus, in *Fox III*, the Court stated that the scope of a regulation must be "'in proportion to the interest served.'" 492 U.S. at 480, 109 S.Ct. at 3034–35 (citation omitted). In *Bolger*, 463 U.S. at 75, 103 S.Ct. at 2885, the court struck down a statute prohibiting the mailing of condom advertisements because

the asserted interest of shielding recipients from offensive materials was insufficient to justify the suppression of speech. With respect to the governmental interest articulated in *Bolger,* the Court concluded:

"Because the proscribed information 'may bear on one of the most important decisions' parents have a right to make, the restriction of 'the free flow of truthful information' constitutes a 'basic' constitutional defect regardless of the strength of the government's interest."

*Id.* at 75, 103 S.Ct. at 2885 (citation omitted). Similarly, in *Linmark Associates,* the Court concluded that the interest in ensuring racial integration could not, as a constitutional matter, justify the suppression of "for sale" signs on homes because the suppression weighed unfavorably against "one of the most important decisions [people] have a right to make: where to live and raise their families." 431 U.S. at 96, 97 S.Ct. at 1620.

However, neither relevant precedent nor the record in this case require the conclusion that the public's interest in information relating to alcohol content so outweighs the government's interest in non-disclosure as to render the statute unconstitutional. We have held that legislation prohibiting alcohol advertisements promotes a substantial interest in health and welfare, which otherwise would be adversely affected by alcohol consumption. *Oklahoma Telecasters Ass'n v. Crisp,* 699 F.2d 490, 498 (10th Cir.1983), *rev'd on other grounds sub nom. Capital Cities Cables, Inc. v. Crisp,* 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984). Similarly, in *Dunagin,* 718 F.2d at 747, the Fifth Circuit upheld a statute that significantly restricted liquor advertising by local media as a legitimate way to avoid the undue promotion of alcohol consumption, in the interest of the public welfare.

Coors notes that the balance struck in favor of non-disclosure in *Oklahoma Telecasters* and *Dunagin* was altered by the fact the *state* legislatures had promulgated the statutes at issue pursuant to the authority granted them under the Twenty-first Amendment. Coors argues that because the regulation in this case was promulgated by *Congress,* the balance of interests weigh in favor of disclosure. Thus, in *Oklahoma Telecasters,* we stated that "when the Twenty-first Amendment is considered in addition to Oklahoma's substantial interest under its police power, the balance shifts in the state's favor, permitting regulation of commercial speech *that might otherwise not be permissible.*" 699 F.2d at 502 (emphasis added). In *Dunagin,* the Fifth Circuit upheld the validity of the advertising regulation noting that precedent establishing the state's special interest in regulating alcohol "help[ed] establish the balance in favor of the state." 718 F.2d at 750.

 *Oklahoma Telecasters* does not require us to conclude that the federal government has no constitutional basis to substantiate its interest, or that the federal government's interest in regulating alcohol content disclosure is insufficient to justify a restraint on speech.[6] The Twenty-first Amendment did not completely abrogate Congressional power to regulate under the Commerce Clause. *See Arrow Distilleries, Inc. v. Alexander,* 109 F.2d 397 (7th Cir.) (FAAA not unconstitutional on ground that Twenty-first Amendment deprived Congress of power to enact interstate alcohol regulation), *cert. denied,* 310 U.S. 646, 60 S.Ct. 1095, 84 L.Ed. 1412 (1940); *see also South Dakota v. Dole,* 483 U.S. 203, 209, 107 S.Ct. 2793, 2797, 97 L.Ed.2d 171 (1987) (Twenty-first Amendment does not preclude Congress from indirectly establishing minimum drinking age by exercising its spending power); *Craig v. Boren,* 429 U.S.

6. As demonstrated by the regulation itself, which is effective only if not contradicted by state law, Congress may have a less compelling interest than state legislatures in the labeling and advertising of the alcohol content of malt beverages. *See* 27 U.S.C. §§ 205(e) and 205(f). Because the statute at issue expressly states that alcohol content may not be disclosed unless required by state law, we need not address whether the holdings in *Oklahoma Telecasters* and *Dunagin* demonstrate that Congress has attempted to trump those powers expressly granted to the states by the Twenty-first Amendment.

190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (Twenty-first Amendment not *pro tanto* repeal of Commerce Clause, but merely requires that each provision "be considered in the light of the other, and in the context of the issues at stake in any concrete case"); *United States v. Frankfort Distilleries, Inc.*, 324 U.S. 293, 297–99, 65 S.Ct. 661, 663–64, 89 L.Ed. 951 (1945) (federal anti-trust prosecution of alcohol producers and distributors consistent with Twenty-first Amendment). We conclude that Congress has sufficient residual authority to regulate the marketplace for the benefit of consumers and producers under the Commerce Clause even though it may result in indirect regulation of alcohol. *See id.* Like the state legislatures in *Oklahoma Telecasters* and *Dunagin,* therefore, Congress may constitutionally regulate alcohol advertisements.

 Coors makes a similar argument with respect to the decision rendered in *Posadas.* There, the Supreme Court stated that the advertising ban was permissible as "the greater power [of the state] to completely ban casino gambling necessarily includes the lesser power to ban advertising of casino gambling." 478 U.S. at 345–46, 106 S.Ct. at 2979. The Court did not state that the greater power to ban gambling was *necessary* to ban gambling advertising. The Court relied on the fact that Puerto Rico had the greater power to ban gambling to distinguish *Posadas* from those cases that struck down regulations restricting information pertaining to constitutionally protected conduct.[7] *Id.* The Court also stated that finding Puerto Rico possessed the power to ban gambling advertisements was necessary to avoid the anomalous result of concluding that Puerto Rico had the police power to make gambling illegal but not to prohibit the advertising of gambling. *Id.* Consequently, Congress need not possess the greater power to completely regulate alcohol sales, a power expressly reserved to the states under the Twenty-first Amendment, in order to reconcile *Posadas* with the holding in this case that Congress can regulate alcohol advertisements consistent with the First Amendment.

### III.

In sum, we hold that Coors' proposal to advertise the alcohol content of beer is commercial speech protected by the First Amendment, and that the public's interests in disclosure are significant. We also hold that the interests asserted by Congress and demonstrated in the legislative history are legitimate and substantial. We conclude that there are genuine issues of material fact underlying the question of whether the federal regulation of alcohol content advertising directly advances the government's asserted interest in preventing strength wars, and whether the complete prohibition of such advertising results in a "reasonable fit" between the legislature's goal and the means chosen to reach it, within the meaning of *Fox III.*

The district court judgment in favor of Coors is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

---

7. We note that the sale and consumption of alcohol are not constitutionally protected activities and can be prohibited.