[redacted]

ADOLPH COORS COMPANY,
Plaintiff–Appellee,

v.

Lloyd BENTSEN,* in his official capacity as Secretary of the United States Department of Treasury; and Steve Higgins, in his official capacity as Director of the Bureau of Alcohol, Tobacco and Firearms, Defendants–Appellants,

and

Speaker and Bipartisan Leadership of the U.S. House of Representatives, Intervenor–Defendant.

No. 92–1348.

United States Court of Appeals,
Tenth Circuit.

Aug. 23, 1993.

[redacted]

[redacted]

[redacted]

[redacted]

John S. Koppel (Stuart M. Gerson, Asst. Atty. Gen., and Stuart E. Schiffer, Acting

* Lloyd Bentsen is substituted for Nicholas Brady pursuant to Fed.R.App.P. 43(c)(1).

Asst. Atty. Gen., Dept. of Justice, Washington, DC, Michael J. Norton, U.S. Atty., Denver, CO, and Michael Jay Singer, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, DC, with him on the briefs), Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, DC, for defendants-appellants.

K. Preston Oade (Jim M. Hansen, of Bradley, Campbell, Carney & Madsen, Professional Corp., Golden, CO, with him on the brief), of Bradley, Campbell, Carney & Madsen, Professional Corp., Golden, CO, for plaintiff-appellee.

Before TACHA and BARRETT, Circuit Judges, and BROWN, District Judge.**

TACHA, Circuit Judge.

Appellants (collectively referred to as the "Government") appeal a district order declaring the portion of 27 U.S.C. § 205(e)(2) which prohibits statements of alcohol content on malt beverage labels to be an unconstitutional restraint on commercial speech in violation of the First Amendment. The Government also appeals the court's order enjoining the Government from enforcing that provision. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

---

** Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

1. "Malt beverage" is defined at 27 C.F.R. § 7.10.

2. Section 205 provides in relevant part:

> It shall be unlawful for any person engaged in business as a distiller, brewer, rectifier, blender, or other producer, or as an importer or wholesaler, of distilled spirits, wine, or malt beverages ... directly or indirectly or through an affiliate:
>
> \* \* \* \* \* \*
>
> (e) Labeling
> To sell or ship or deliver for sale or shipment, or otherwise introduce in interstate or *foreign commerce, or to receive therein, or to* remove from customs custody for consumption, any distilled spirits, wine, or malt beverages in bottles unless such products are bottled, packaged, and labeled in conformity with such regulations, to be prescribed by the Secretary of the Treasury, with respect to packaging, marking, branding, and labeling and size and fill of container ... (2) as will provide the consumer with adequate information as to the

## I. Background

Congress enacted the Federal Alcohol Administration Act ("Act"), 27 U.S.C. §§ 201–211, in 1935 after the repeal of Prohibition. The Act contains comprehensive regulations of the alcoholic beverage industry, including provisions that were intended to remedy industry practices which Congress had determined were unfair, deceptive, and harmful to both competitors and consumers. Two such provisions prohibit statements of alcohol content on malt beverage[1] labels and advertisements unless such disclosures are required by state law. 27 U.S.C. § 205(e)(2), (f)(2).[2]

In 1987, Adolph Coors Co. ("Coors") sought the Bureau of Alcohol, Tobacco and Firearms's approval for proposed labels and advertisements that disclosed the alcohol content of its malt beverages. The bureau denied the request pursuant to § 205(e)(2) and (f)(2). Coors then brought this action to challenge the decision, arguing that the provisions impose an unconstitutional restraint on commercial speech in violation of the First Amendment.

The district court granted summary judgment for Coors and the Government appealed. On appeal, we evaluated the provisions under the four-part test for restrictions on commercial speech set forth in *Central Hud-*

---

identity and quality of the products, the alcoholic content thereof (*except that statements of, or statements likely to be considered as statements of, alcoholic content of malt beverages are prohibited unless required by State law ...*).

\* \* \* \* \* \*

(f) Advertising
To publish or disseminate or cause to be published or disseminated by radio broadcast, or in any newspaper, periodical or other publication or by any sign or outdoor advertisement or any other printed or graphic matter, any advertisement of distilled spirits, wine, or malt beverages, if such advertisement is in, or is calculated to induce sales in, interstate or foreign commerce, or is disseminated by mail, unless such advertisement is in conformity with such regulations, to be prescribed by the Secretary of the Treasury, ... (2) as will provide the consumer with adequate information as to the identity and quality of the products advertised, the alcoholic content thereof (*except the statements of, or statements likely to be considered as statements of, alcoholic content of malt beverages and wines are prohibited* )....
27 U.S.C. § 205 (emphasis added).

*son Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980):

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Id.* at 566, 100 S.Ct. at 2351. Applying the first two parts of the test, we concluded that the proposed labels and advertisements were commercial speech protected by the First Amendment and that the Government had asserted a legitimate and substantial interest in preventing strength wars among malt beverage brewers. *See Adolph Coors Co. v. Brady*, 944 F.2d 1543, 1547–49 (10th Cir. 1991) (*"Coors I "*). We reversed and remanded, however, holding that there were genuine issues of material fact as to whether the statutory prohibitions directly advance the Government's interest in preventing strength wars and whether there is a reasonable fit between the Government's asserted interest and the complete prohibitions imposed by the statute. *See id.* at 1554.

After conducting a trial on remand, the district court held that the relevant portion of § 205(f)(2) is constitutional, but that the portion of § 205(e)(2) which prohibits statements of alcohol content on malt beverage labels imposes an unconstitutional restraint on commercial speech in violation of the First Amendment because it neither directly advances nor reasonably fits the goal of preventing strength wars. The Government now appeals the district court's judgment with respect to § 205(e)(2) and we limit our review to that provision.

**3.** The parties do not dispute that the labeling of malt beverages' alcohol content is protected commercial speech under the first part of the

## II. Discussion

■ The Government has the burden of proving that the labeling prohibition of § 205(e)(2) directly advances its interest in preventing strength wars.[3] We stated in *Coors I* that the *Central Hudson* test requires "an immediate connection between the prohibition and the government's asserted end. If the means-end connection is tenuous or highly speculative, the regulation cannot survive constitutional scrutiny." 944 F.2d at 1549 (internal quotations omitted). The Government challenges this standard on appeal and, relying on *Posadas de Puerto Rico Association v. Tourism Co.*, 478 U.S. 328, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986), argues that the Government need only demonstrate that Congress reasonably believed that the statutory prohibition would further its objective when it enacted the labeling restriction. *See id.* at 341–42, 106 S.Ct. at 2976–77.

■ Since the Government filed its appellate brief, however, the Supreme Court has decided *Edenfield v. Fane,* —— U.S. ——, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993), in which it articulates a standard that is consistent with our pronouncements in *Coors I* and much stricter than the "reasonably believed" standard the Government would have us adopt. In *Edenfield,* the Court stated that, under this third prong of the *Central Hudson* test, courts must determine "whether the challenged regulation advances [the government's] interests in a direct and material way." *Id.,* at ——, 113 S.Ct. at 1798. It went on to say that the party restricting commercial speech carries the burden of justifying the restriction and that "[t]his burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id.,* at ——, 113 S.Ct. at 1800. This burden also applies to prophylactic regulations like the challenged prohibition in § 205(e)(2) where the Government prohibits conduct at the outset rather than waiting until harm has oc-

*Central Hudson* test or that the Government has a substantial interest in preventing strength wars under the second part.

curred. *Id.*, at ——, 113 S.Ct. at 1803 (prophylactic ban "in no way relieves the State of the obligation to demonstrate that it is regulating speech in order to address what is in fact a serious problem and that the preventative measure it proposes will contribute in a material way to solving that problem").

■ The Government asserts that the prohibition on speech contained in § 205(e)(2) was imposed to prevent strength wars among malt beverage manufacturers. This assertion is supported by the Act's legislative history which contains testimony "that labels displaying alcohol content resulted in a strength war wherein producers competed for market share by putting increasing amounts of alcohol in their beer." *Coors I,* 944 F.2d at 1548. There was also hearing testimony "that not disclosing the alcohol content on malt beverages would relieve marketplace pressures to produce beer on the basis of alcohol content, resulting over the long term in beers with a lower alcohol content." *Id.* The Government argues that, despite changes in the malt beverage industry and market since 1935, § 205(e)(2) directly advances its crusade against the continuing danger of strength wars. After reviewing the record, we conclude that, although the Government's interest in preventing strength wars is legitimate and is within its regulatory authority, the prohibition in § 205(e)(2) does not advance this interest in a direct and material way.

The Government relies primarily on anecdotal evidence that malt beverage manufacturers already are competing and advertising on the basis of alcohol strength in the malt liquor sector of the market.[4] The record contains evidence that consumers who prefer

malt liquor do so primarily because of its higher alcohol content and that a number of manufacturers have tried to advertise malt liquor—in violation of the regulations—by using descriptive terms such as "power," "strong character," "dynamite," and "bull" to tout its alcohol strength. On the basis of this evidence, the Government makes an inferential and conclusory argument that the "experience of the malt liquor industry establishes the continuing validity of the statutory scheme" as applied to all malt beverages as well as "the very real danger of strength wars if the labeling ban is struck down."

This argument is unavailing. Although the evidence may support the Government's assertion that there is a continuing threat of strength wars which it aims to prevent, Coors does not contest either the existence of such a threat or the Government's interest in preventing strength wars. The critical question is whether the evidence shows the required relationship between the labeling prohibition that Coors is challenging and the threat of strength wars. Coors is challenging the prohibition on factual statements regarding the percentage of alcohol by volume rather than the prohibition on the sort of descriptive terms that have been used in the malt liquor sector.[5] The Government simply has not shown a relationship between the publication of such factual information and strength wars.

The Government's argument is further undermined by the absence of any record evidence indicating that there are strength wars in states or other countries where alcohol content labeling is already required. *See Edenfield,* —— U.S. at ——, 113 S.Ct. at 1800 (noting lack of anecdotal evidence from states that do not impose similar restric-

---

4. "Malt liquor" is the term used to designate those malt beverages with the highest alcohol content, whereas light beer and non-alcoholic beer are malt beverages containing reduced alcohol content. Malt liquors represent approximately three percent of the malt beverage market.

5. The Act's implementing regulations distinguish these two types of statements. Coors is challenging the type of restriction contained in 27 C.F.R. § 7.26(a) which provides that "[t]he alcoholic content and the percentage and quantity of the

original extract shall not be stated unless required by State law." Coors is not challenging § 7.29(f), which provides that "[l]abels shall not contain the words 'strong', 'full strength', 'extra strength' ... or similar words or statements, likely to be considered as statements of alcoholic content." Nor does it challenge § 7.29(g), which provides that "[l]abels shall not contain any statements, designs, or devices whether in the form of numerals, letters, characters, figures, or otherwise, which are likely to be considered as statements of alcoholic content."

tions). In fact, there is uncontroverted evidence that brewers in the United States have no intention of increasing alcohol strength, regardless of labeling regulations, because the vast majority of consumers in the United States value taste and lower calories—both of which are adversely affected by increased alcohol strength.

Finally, the Government asserts that Coors is challenging the labeling restrictions because of its desire to counter a consumer perception that its malt beverages contain less alcohol than competing brands. This assertion, however, does not show directly, or even imply, that Coors would engage in a strength war if it were able to disclose the alcohol content of its malt beverages on their labels. In fact, the opposite inference is more plausible—if Coors could overcome the misperception by simply publishing the percentage of alcohol content on the label, it would have no incentive to produce stronger beverages.

We find that the Government has offered no evidence to indicate that the appearance of factual statements of alcohol content on malt beverage labels would lead to strength wars or that their continued prohibition helps to prevent strength wars. Instead, it has offered only inferential arguments that are based on mere speculation and conjecture and fails to show that the prohibition advances the Government's interest in a direct and material way.[6] We therefore hold that the portion of 27 U.S.C. § 205(e)(2) which prohibits statements of alcohol content on malt beverage labels imposes an unconstitutional restraint on commercial speech in violation of the First Amendment.

**AFFIRMED.**

---

**6.** Because we conclude that the Government has failed to satisfy its burden under the third part of the *Central Hudson* test, we need not proceed to the fourth part to determine whether there is a reasonable fit between the prohibition and the Government's interest.